64029, 64030. SAWYER v. CITIZENS & SOUTHERN
NATIONAL BANK; and vice versa.
64031, 64049. ST. PAUL FIRE & MARINE INSURANCE
COMPANY v. SAWYER; and vice versa.

SOGNIER, Judge.
Sawyer purchased a recreational vehicle and in June, 1978 executed a conditional sales contract which was assigned to Citizens and Southern National Bank (C&S). In May, 1980 the vehicle was stolen and Sawyer filed a claim with St. Paul Fire and Marine Insurance Company (St. Paul), which had issued an insurance binder on the vehicle some ten days before the theft. Sawyer had completed an application for a policy, but the policy had not been issued when he learned of the loss and notified his agent.

St. Paul filed a complaint for declaratory judgment against

Sawyer and C&S, the loss payee, seeking a determination of its liability on the stolen vehicle. St. Paul later amended its complaint seeking rescission of the insurance contract on the basis of material misrepresentations in Sawyer's application for the insurance policy. Sawyer and C&S filed counterclaims against St. Paul seeking the value of the vehicle and bad faith penalties for St. Paul's failure to pay the claim. The trial court granted motions by Sawyer and C&S to dismiss St. Paul's complaint, leaving the case to proceed on the counterclaims of C&S and Sawyer against St. Paul.

C&S also filed a cross-claim against Sawyer, alleging non-payment of the conditional sales contract and seeking the amount due under the contract, attorney fees and collection costs. The trial court granted C&S's motion for summary judgment on the contract claim in the amounts of $45,538.10 principal and $2,994.25 interest, but denied the claim for attorney fees and costs of collection.

C&S and Sawyer moved for summary judgment on their counterclaims against St. Paul; St. Paul moved for summary judgment against Sawyer and C&S on their counterclaims. The trial court granted C&S' and Sawyer's motions against St. Paul and denied St. Paul's motion on the issue of coverage for loss of the vehicle and entered judgment for $62,500 as the value at the time of loss, together with interest. The trial court granted summary judgment on the bad faith claims in favor of St. Paul.

Sawyer appeals from the trial court's grant of summary judgment in favor of C&S on its cross-claim for the contract amount. C&S cross-appeals the denial of its motion for summary judgment on its claim for attorneys fees and collection costs against Sawyer.

St. Paul appeals from the trial court's grant of summary judgment in favor of C&S and Sawyer on the issue of coverage. Sawyer cross-appeals the denial of his motion for summary judgment against St. Paul on the issue of bad faith.

1. *Case Nos. 64029, 64030.*

Appellant Sawyer contends that the trial court erred in granting summary judgment on the contract in favor of C&S. The evidence shows that Sawyer made payments under the conditional sales contract from the time the vehicle was purchased in 1978 until approximately two months after its theft in 1980. Sawyer anticipated an insurance payment by St. Paul on the loss of the vehicle. In February 1981, C&S demanded the accelerated amount due under the contract and gave notice of its right to attorney fees. C&S sent a second demand letter for the accelerated indebtedness, again giving notice of its right to attorney fees, in September, 1981, apparently as a result of having made demand for an erroneous amount in its original letter.

a. Sawyer first contends that the trial court erred in granting summary judgment in favor of C&S because C&S did not pierce the affirmative defense of accord and satisfaction raised in Sawyer's answer to C&S' cross-claim and because issues of fact remain. In an affidavit in opposition to C&S' motion for summary judgment, Sawyer stated that at a meeting with C&S officials held in March 1981, he was "given an opportunity to cure the default through refinancing the Promissory Note with C&S, or to obtain alternative financing with other institutions." Sawyer refers to this "opportunity" as an extension agreement. Sawyer stated further that he was unable to obtain other financing due to a negative credit report filed by C&S that reflected his default on the contract. C&S, through the affidavit of one of its officers, denied that C&S had ever "entered into any payout agreement with Sawyer concerning his debt or the repayment of the debt" and asserted that its consistent position had been that Sawyer was obligated on the contract.

While construing the evidence most favorably to Sawyer as the party opposing C&S' motion for summary judgment *(Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866) (1971)), we hold as a matter of law that there was no accord and satisfaction. "An accord and satisfaction is an agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, which when performed is a bar to all actions on this account. [Cit.] An accord and satisfaction is created when the parties, by a subsequent agreement, have satisfied the former one, and the latter agreement has been executed. . . . An accord and satisfaction is itself a contract and requires a meeting of the minds in order to render it valid and binding." *Woodstock Road Investment Properties v. Lacy,* 149 Ga. App. 593 (1), 594 (254 SE2d 910) (1979). There is no evidence that the parties intended to create a new agreement that would have the effect of satisfying C&S' rights under the sales contract (see *First Nat. Bank of Gainesville v. Appalachian Industries,* 146 Ga. App. 630, 634 (5) (247 SE2d 422) (1978); *Walsey v. Alterman Foods,* 140 Ga. App. 270 (1) (231 SE2d 3) (1976)), and no evidence of a meeting of the minds to substitute a new agreement for the original contract. *Woodstock Road,* 149 Ga. App. at 594, supra.

The evidence, instead, shows a discussion between the parties of a means by which Sawyer might satisfy the indebtedness of the original agreement with C&S. At best, the discussion was an attempt by Sawyer to modify the original contract with C&S by obtaining an extension of time for payment. However, even if the discussion culminated in an extension agreement, its terms, as described by Sawyer, are too vague, indefinite, and uncertain to constitute a

binding contract. " 'The first requirement of the law relative to contracts is that there must be a meeting of the minds of the parties, and mutuality [cits], and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. [Cits]. A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible . . .' " [Cit.] *Bagwell-Hughes, Inc. v. McConnell,* 224 Ga. 659, 661-662 (164 SE2d 229) (1968).

The trial court, therefore, did not err in rejecting Sawyer's argument that there was an accord and satisfaction.

b. Sawyer next contends that an issue of fact remains as to whether the negative credit report placed by C&S was responsible for his failure to obtain other financing, so that C&S' own conduct prevented Sawyer's performance of the purported extension agreement and the performance was thereby excused. This contention is without merit, for as we held in Division 1a above, there was no extension agreement to alter Sawyer's obligation to perform under the original contract.

c. Sawyer also contends that the extension agreement constituted a waiver by C&S of Sawyer's default and that C&S failed to retract the waiver before sending out its second demand letter stating the correct accelerated amount due. "Not only did the appellant [Sawyer] fail to plead affirmatively the defense of waiver, but also the evidence introduced on the motion for summary judgment showed that [his] waiver defense was not viable. CPA § 8 (Code Ann. § 81A-108)." *Hall v. First Nat. Bank of Atlanta,* 145 Ga. App. 267, 269 (243 SE2d 569) (1978). See *Phillips v. State Farm Mut. Auto. Ins. Co.,* 121 Ga. App. 342, 345 (2) (173 SE2d 723) (1970). Sawyer's reliance on *Carmichael v. Guenette,* 61 Ga. App. 460 (6 SE2d 365) (1939), in support of his waiver defense is misplaced, since that case involved an enforceable extension agreement with a definite period of time for extended payment. The purported extension agreement in the instant case was too vague to be enforceable. Here, the trial court did not err in granting summary judgment in favor of C&S against Sawyer for the amount due under the contract.

d. On cross appeal C&S argues that because the trial court granted its motion for summary judgment on the contract, it was also entitled to summary judgment for attorney fees in the amount of 15%, as provided for in the contract. We agree. C&S presented evidence of compliance with the requirements of Code Ann. § 20-506, and the trial court should have granted summary judgment in favor of C&S on its claim for attorney fees. *Mercantile Nat. Bank v. Berger,* 129 Ga. App. 707, 709 (5) (200 SE2d 921) (1973), aff'd 231 Ga. 680 (203 SE2d 479) (1974).

Sawyer's argument that the debt had not yet matured (see Code Ann. § 20-506) by virtue of the extension agreement is without merit, as we have determined that no viable extension agreement existed.

2. *Case Nos. 64031, 64049.*

a. Appellant St. Paul contends that the trial court erred by denying its motion for summary judgment and ruling as a matter of law that there was insurance coverage on the vehicle. The evidence shows that on May 1, 1980 Weathers, an insurance agent, issued a written binder on the vehicle providing liability, property damage, medical payments, comprehensive, collision, and uninsured motorist coverage by St. Paul. A written application signed by Sawyer was dated May 14, 1980, and the theft of the vehicle occurred on or about May 10, 1980. In August, 1981 the vehicle was recovered in a damaged but operable condition.

The parties agree that coverage under the binder was in effect at the time of the loss, but St. Paul contends that this coverage was void ab initio because of Sawyer's failure to disclose material facts to his agent and to St. Paul. These facts were the driving records of Sawyer and his son; the ownership of the vehicle, which was purchased, titled, and registered in the name of Sawyer's unincorporated horse breeding enterprise and "hobby," Bonnie Brae Farms; and the use of the vehicle in the business activity of showing horses, Sawyer's regular occupation being the practice of medicine. St. Paul contends that if these facts had been known, the agent would not have issued the binder nor would coverage have been available from St. Paul.

A binder is a contract of insurance, albeit a temporary, sketchy, and informal contract, which is intended to give temporary protection pending the investigation of the risk by the insurer or until issuance of a formal policy. *Cincinnati Insurance Co. v. Stuart,* 139 Ga. App. 80, 82 (227 SE2d 771) (1976); *Fort Valley Coca-Cola Bottling Co. v. Lumbermen's Mut. Cas. Co.,* 69 Ga. App. 120, 124 (24 SE2d 846) (1943). The binder is an independent contract, separate and distinct from the permanent policy which may be issued on the basis of the written application. Id. Because the evidence in this case shows that the loss occurred while the binder was in effect, we need be concerned only with misrepresentations which may have occurred in connection with issuance of the *binder.* Any alleged misrepresentations in the application for the policy were not material to nor relied upon by the insurance agent or St. Paul in issuing the binder. See *Cincinnati,* supra, at 82. See also Hay v. Utica Mutual Insurance Co., 551 SW2d 954, 957 (Mo. App. 1977); 12A Appleman, Insurance Law & Practice § 7228, p. 162.

St. Paul has presented no evidence of misrepresentation,

concealment, or omission on Sawyer's part at the time the binder was issued. The sole evidence offered in support of St. Paul's allegations of misrepresentation had to do with Sawyer's answers to the written application. There is no evidence of questions asked of Sawyer by the agent at the time the binder was issued to which false or otherwise fraudulent responses were given on the matters that St. Paul now asserts were material to its risk. "An insurance company can not assert that a factor is material to the risk about which it has neither made inquiry or apprised its prospective insured." *Ga. Farm Bureau Mut. Ins. Co. v. First Federal Savings &c. Assn. of Statesboro,* 152 Ga. App. 16, 18 (262 SE2d 147) (1979). While St. Paul argues, in effect, that Sawyer knew or should have known about the materiality of certain facts because he had applied for and obtained motor vehicle insurance coverage in the past, St. Paul has not shown that at the time the binder was issued, Sawyer was asked about these matters or otherwise informed that they were material bases for issuance of the binder. *Georgia Farm Bureau,* 152 Ga. App. at 18, supra. "The seeker of an insurance binder, without solicitation, is not required to disclose information pertinent to warranties, declarations or representations pertaining to issuance of the final policy. [Cits.] Unless . . . an application or similar disclosure of facts be a prerequisite to the issuance of a binder, the insured in a contract for temporary insurance could not be held to anticipate what warranties or representations a particular insurer would thereafter seek and rely upon before issuing or refusing to issue a subsequent policy." Hay, 551 SW2d at 957, supra; 16C Appleman, supra, § 9255, p. 352.

Finally, there is a factual dispute as to the date Sawyer signed the application, which is shown on the face of the document to be May 14, 1980. The agent stated in an affidavit it was May 14, 1980; Sawyer stated in a deposition it was May 1, 1980, which St. Paul points out is the same day the binder was issued. However, in the absence of any evidence showing that the insurer relied upon or acted upon statements in the application in issuing the binder or that Sawyer was informed of the materiality of questions in the application to the issuance of the binder, whether the application was signed on May 1st or 14th is not material to the question of St. Paul's liability under the binder.

Therefore, no genuine issue of material fact remains as to St. Paul's liability under the insurance binder and the trial court was correct in granting summary judgment in favor of Sawyer and C&S, as they were entitled to judgment as a matter of law. Code Ann. § 81A-156. Thus, St. Paul's motion for summary judgment on the issue of coverage was properly denied. As there was no evidence of misstatements or omissions of material facts at the time the binder

was issued, it is not necessary that we determine whether the defense under Code Ann. § 56-2409 is available to insurers in cases involving binders, as opposed to applications for insurance policies.

b. St. Paul also contends that the trial court erred in granting summary judgment in favor of Sawyer and C&S jointly and severally for the full value of the vehicle. The undisputed evidence supported the amount awarded and the judgment provided for St. Paul to take ownership and possession of the vehicle. On appeal, St. Paul raises defenses of waiver and estoppel to Sawyer's right to recover the full value of the lost vehicle and argues that a factual question exists as to what is a "reasonable time" during which St. Paul should be permitted to recover the vehicle and return it to Sawyer before becoming obligated on its full value. However, St. Paul relied on a general denial of liability as its defense, and St. Paul did not raise the affirmative defenses of waiver and estoppel in any pleading or in its motion for summary judgment. Therefore, the defenses were waived. *Daniel & Daniel, Inc. v. Cosmopolitan Co.,* 146 Ga. App. 200, 201 (1) (245 SE2d 885) (1978); *Phillips,* 121 Ga. App. at 345 (2), supra. Also, according to the record and transcript, St. Paul's "reasonable time" argument was not raised below and it will not be considered for the first time on appeal. *Carter v. Pruitt,* 235 Ga. 204 (219 SE2d 114) (1975); *Deal v. Dickson,* 231 Ga. 366 (202 SE2d 41) (1973); *Williams v. First Bank & Trust Co.,* 154 Ga. App. 879, 884 (6) (269 SE2d 923) (1980); *Phillips,* 121 Ga. App. at 347 (2b), supra.

c. Sawyer cross-appealed contending the trial court erred in denying his motion for summary judgment on the question of punitive damages and attorney fees pursuant to Code Ann. § 56-1206. We hold that the trial court was correct in denying Sawyer's motion on this issue but erred in granting St. Paul's motion for summary judgment. It is undisputed that Sawyer made a demand for payment on St. Paul (see Code Ann. § 56-1206) and that St. Paul has refused payment. However, a question of fact remains as to whether "such refusal was in bad faith. . . ." Code Ann. § 56-1206. The trial court rejected St. Paul's defenses to payment by holding it liable for loss of Sawyer's vehicle under the insurance binder, and we have affirmed this holding in Division 2a above. Therefore, it cannot be said "as a matter of law that [St. Paul's defense] was a reasonable defense which vindicates the good faith of the insurer." *Colonial Life & Accident Ins. Co. v. McClain,* 243 Ga. 263, 265 (253 SE2d 745) (1979). "A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company. . . . [A]ny defense not manifesting such reasonable and probable cause, would expose the company to the imputation of bad faith. . . ." *Interstate Life & Accident Ins. Co. v. Williamson,* 220 Ga. 323,

325-326 (138 SE2d 668) (1964). Thus exposed by the weakness of its defenses, St. Paul was not entitled to summary judgment on the issue of penalties under Code Ann. § 56-1206, as the question of bad faith remained one for the jury. *Atlantic American Life Ins. Co. v. Morris,* 144 Ga. App. 577, 578 (4) (241 SE2d 463) (1978); *Ins. Co. of St. Louis v. Bray,* 105 Ga. App. 675, 677 (4) (125 SE2d 691) (1962), overruled on other grounds; *Liberty Loan Corp. of Lakewood v. Leftwich,* 115 Ga. App. 113, 115 (153 SE2d 596) (1967) (on motion for rehearing). We note also that St. Paul's complaint for declaratory judgment does not necessarily constitute such a demonstration of good faith as to insulate it from the penalty provision of Code Ann. § 56-1206. See generally *Sentry Ins. v. Almeida,* 151 Ga. App. 514, 515 (260 SE2d 356) (1979).

d. St. Paul contends that Sawyer is not entitled to seek bad faith penalties because less than 60 days elapsed from Sawyer's demand for payment and the filing of his counterclaim to St. Paul's declaratory judgment. Code Ann. § 56-1206; *Hanover Ins. Co. v. Hallford,* 127 Ga. App. 322 (193 SE2d 235) (1972). The evidence shows that the vehicle was stolen in May, 1980; the theft was reported to St. Paul on May 27, 1980; St. Paul's complaint for declaratory judgment was filed December 4, 1980; Sawyer filed a motion to dismiss on January 7, 1981; Sawyer's written demand for payment was dated January 15, 1981; St. Paul amended its complaint to rescind the contract on January 22, 1981; and on February 22, 1981, Sawyer answered the complaint and filed his compulsory counterclaim (see Code Ann. § 81A-113(a)) for recovery on the insurance contract. We hold that St. Paul waived any right to require that Sawyer wait 60 days after making demand before filing suit. *Gulf Life Ins. Co. v. Matthews,* 66 Ga. App. 162, 165-166 (17 SE2d 247) (1941). See also *Continental Ins. Co. v. Wickham,* 110 Ga. 129, 133 (2) (35 SE 287) (1899); *Continental Life Ins. Co. v. Wilson,* 36 Ga. App. 540 (6) (137 SE 403) (1926); *Scott v. Life & Cas. Ins. Co.,* 34 Ga. App. 479 (1) (129 SE 903) (1925). The purpose of the waiting period, which is to protect the insurer by giving it a reasonable time to investigate the claim, examine the facts, and determine its liability, is no longer served when the insurer files suit seeking to relieve itself of liability under the policy. Great American Reserve Insurance Co. v. Britton, 406 SW2d 901, 907 (Tex. 1966); 16 Couch on Insurance 2d § 58:208, p. 124. See also *Continental,* 110 Ga. at 135, supra; Wilkins v. Allstate Insurance Co., 173 S2d 199, 202 (La. App. 1965); Sbisa v. American Equitable Assurance Co. of New York, 11 S2d 527, 534 (La. 1942) (on rehearing); Parisi v. Washington National Insurance Co., 501 SW2d 732, 733 (Tex. Civ. App. 1973); 145 ALR 343, 348. Thus, St. Paul's contention is without merit.

*Judgments affirmed in Case Nos. 64029 and 64031. Judgments reversed and cases remanded for further proceedings not inconsistent with this opinion in Case Nos. 64030 and 64049. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 13, 1982 —
REHEARING DENIED OCTOBER 29, 1982 —

*Michael Weinstock, Laurence A. Marder,* for appellant (case nos. 64029, 64049).

*Ben F. Johnson III, J. Scott Jacobson,* for appellant (case no. 64030).

*George W. Hart, Philip C. Henry,* for appellant (case no. 64031).

*Ben F. Johnson III, J. Scott Jacobson,* for appellee (case no. 64029).

*Michael Weinstock, Laurence A. Marder,* for appellee (case no. 64030).

*Michael Weinstock, Laurence A. Marder, Ben F. Johnson III, J. Scott Jacobson,* for appellee (case no. 64031).

*Philip C. Henry, George W. Hart,* for appellee (case no. 64049).