**MIDLAND NATIONAL LIFE INSURANCE COMPANY, Plaintiff,**

v.

**The CITIZENS AND SOUTHERN NATIONAL BANK, Jasper T. Hogan, Jr. and Sharon D. Hogan, Defendants.**

**Civ. A. No. 85–415–1–MAC.**

United States District Court, M.D. Georgia, Macon Division.

Aug. 6, 1986.

Ben Kingree, III, Carter, Ansley, Smith & McLendon, Atlanta, Ga., for plaintiff.

John T. McGoldrick, Jr., Martin, Snow, Grant & Napier, Walter H. Bush, Jr., Hansell & Post, Macon, Ga., for defendants.

FITZPATRICK, District Judge:

This case is before the court on cross-motions for summary judgment by plaintiff and defendant. Plaintiff, Midland National Life Insurance Company (Midland), is asking for a declaratory judgment to determine its liability to defendant-beneficiaries under a life insurance policy. This court has jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201.

The material facts in this case are undisputed. On April 29, 1983, Thomas M. Hogan applied to Midland for a policy of life insurance in the face amount of $250,000. According to the application, the policy applied for was "Exec. Select–21." Also on April 29, 1983, Thomas Hogan paid plaintiff the first month's premium for the policy for which he had applied, and he was issued a conditional receipt by Midland's agent.

The conditional receipt issued on April 29 provided in relevant part:

If after investigation and medical examination (if required) the company shall be satisfied that on the date of the application or such medical examination, whichever is later, each person proposed for insurance was insurable and entitled under the company's rules and standards to insurance on the plan and for the amount and at the rate of premium applied for, *the insurance protection applied for shall by reason of such payment take effect from the date of application or such medical examination or the date specifically requested in the application, whichever is later,* but in no event

shall the company's liability prior to the actual issuance and delivery of the policy exceed $100,000.00. (emphasis added).

Thomas Hogan's application and first month's premium were received by Midland on May 15, 1983, and the application received underwriting approval from Midland on June 8, 1983. On June 18, 1983, ten days after it granted underwriting approval, Midland issued to Thomas Hogan life insurance policy number 00983127 providing coverage in the face amount of $250,-000. It was standard practice and procedure for the 'issue date' of all life policies issued by Midland to be dated ten days following underwriting approval.

The words "ISSUE DATE 6/18/83" appear on page three of the policy. Page six of the policy contains a definitions section that defines 'issue date' as "the date, shown on page 3, that this Contract goes into effect." The policy defines 'contract' as "this policy, together with the application and any riders." Page eleven of the policy contains a suicide exclusion clause that provides "[i]f the Insured, while sane or insane, dies by suicide within two years from the Issue Date, we will pay as the Proceeds, the sum of the premiums paid."

Thomas Hogan died on May 15, 1985, more than two years from the date of the binder or conditional receipt but not quite two years from the "Issue Date" set forth on page three of the policy. As a result of the decision reached by this court, whether or not Hogan's death was the result of suicide is not relevant to the question of Midland's liability.

The issue presented by these cross-motions for summary judgment is whether the "Issue Date" as set forth on page three of the policy controls for purposes of measuring the two-year time period in the suicide exclusion clause. Midland contends that the policy unambiguously defines issue date; therefore, the provision regarding suicide should apply because the insured died less than two years from June 18, 1983, the issue date set forth on page three of the policy. Defendants contend that full benefits are due under the policy because the

policy ambiguously defines issue date, and, when the contract is construed most strongly against the insurer, issue date should be construed to be April 29, 1983, the date of the conditional receipt. This court finds that defendants are entitled to full recovery.

The court must determine the rights and liabilities of the parties in this diversity case according to the law of Georgia. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). State law is to be followed when it has been announced by the state's highest court. In the absence of a decision from the highest court, intermediate state court decisions should be followed, unless persuasive data convinces this court that the state's highest court would decide otherwise, *Bailey v. Southern Pacific Transportation Co.*, 613 F.2d 1385, 1388 (5th Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980). A Georgia Supreme Court decision "must be on the precise point in controversy in the federal court in order to have binding effect as a precedent...." *Greyhound Lines, Inc. v. Cobb County, Georgia*, 523 F.Supp. 422, 427 (N.D.Ga.1981), *aff'd*, 681 F.2d 1327 (1982). In the present case counsel have not cited to the court any Georgia appellate decision on point, so it is this court's duty to decide the issue as it believes the Georgia Supreme Court would decide it. *Green v. Amerada-Hess Corp.*, 612 F.2d 212, 214 (5th Cir.), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980); 19 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 4507, at 103 (1982).

A number of reasons support this court's decision that the beneficiaries are entitled to recover full benefits under the policy. First, the policy, the application, and the conditional receipt, when read together, create an ambiguity that must be construed against the insurer. *Georgia Farm Bureau Mutual Insurance Co. v. Coleman*, 121 Ga.App. 510, 511–12, 174 S.E.2d 351, 352 (1970). Second, to disallow recovery would violate the public policy expressed in the Georgia Code. The Code

prohibits the issuance of any life insurance policy that restricts liability for death caused in a specific manner, except in certain narrow circumstances. O.C.G.A. § 33–25–5(a)(5) (Michie 1982).

In construing the insurance policy this court is guided by what a reasonable person in the position of the insured would interpret the words to mean. *Nationwide Mutual Fire Insurance Co. v. Collins*, 136 Ga.App. 671, 675, 222 S.E.2d 828, 831 (1975). "The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *Id.*

Midland contends that "Issue Date", as used in the suicide exclusion clause, is unambiguously defined by the policy as June 18, 1983. The policy defines issue date as "the date, shown on page 3, that this Contract goes into effect." On page three is printed "Issue Date 6/18/83." The policy then defines contract as "this policy, together with the application and any riders." The conditional receipt makes the reference to "Issue Date" in the suicide clause ambiguous, however, because the receipt says that "the insurance protection applied for shall ... take effect from the date of application...." The application in turn makes reference to a specific policy, "Exec Select–21."

The conditional receipt apparently made coverage under "Exec Select–21" effective from April 29, 1983. Thus, April 29, 1983 would appear to be the date "that this Contract goes into effect." There is an ambiguity as to whether the issue date is June 18, 1983, the date shown on page three of the policy, or April 29, 1983, the date when "the insurance protection applied for ..." took effect. A reasonable person in the place of the insured would interpret the contract as taking effect from the date of application, April 29, 1983. *Na-*

*tionwide*, 136 Ga.App. at 675, 222 S.E.2d at 831.

Counsel for both parties have cited to the court *American National Insurance Co. v. Motta*, 404 F.2d 167 (5th Cir.1968) and *Travelers Insurance Co. v. Summers*, 696 F.2d 1311 (11th Cir.1983). In *Motta*, the former Fifth Circuit Court of Appeals held that the two year suicide exclusion clause began to run from the date of the conditional receipt rather than the "Policy Issue Date" on the formal policy. The insured in that case made an application for a policy and was issued a conditional receipt on April 20, 1969. On that same date the insured paid the first monthly premium. The conditional receipt [1] was effective from April 20, 1964, and provided that it was "subject to the terms of [the] policy." *Motta*, 404 F.2d at 168.

The insurance company issued its formal policy on June 9, 1964, and that date was specified as the "Policy Issue Date." The policy had a suicide exclusion clause that was effective for "suicide within two years from the Policy Issue Date...." *Id.* The insured committed suicide on May 9, 1966, more than two years after the effective date of coverage under the conditional receipt, but less than two years from the "Policy Issue Date."

The court stated that the policy was "quite unclear as to what terms appl[ied] to the insured during the period between application and issuance of the policy." *Id.* The language in the conditional receipt stating that it was "subject to the terms of the policy" created this ambiguity. The court concluded that " 'taking together the application, conditional receipt, and policy with references to one another and their various terms, there exists an ambiguity which must be decided in favor of the insured.' " *Id.*

---

1. The conditional receipt provided:
   This receipt shall be binding from such effective date [April 20, 1964] until the date on which the policy applied for becomes effective or until the effective date of short-term coverage, if any, whichever is earlier; it is subject to the terms of said policy, must bear the same date and serial number as the application, and be signed by a duly authorized representative of the Company.
   404 F.2d at 168.

Midland contends that its conditional receipt is unambiguous because it does not state that it is "subject to the terms of the policy." This court does not agree that there is any substantive difference between that language and the language in Midland's receipt that "the insurance protection applied for shall ... take effect on the date of application...." In either case coverage must be determined by reference to the policy for which application has been made.

The case of *Travelers Insurance Co. v. Summers,* 696 F.2d 1311 (11th Cir.1983) emphasizes that the phrase "subject to the terms of the policy" is not a talismanic phrase, the absence of which assures the clarity of the conditional receipt. In *Summers,* the insured committed suicide more than two years from the date of coverage under the conditional receipt, but less than two years from the "Date of Issue" on the formal policy. Like the suicide clause in Midland's policy, the suicide clause in *Summers* ran from "the 'Date of Issue' of this contract." *Id.* at 1312. The conditional receipt made reference to "[i]nsurance under the terms of the contract applied for...." *Id.* The court in *Summers* held that the conditional receipt and policy, when read together, created an ambiguity concerning when the suicide clause began to run. *Id.* at 1315.

Midland contends that *Summers* is inapposite because the lack of a definition of date of issue in *Summers* contributed to that policy's ambiguity. The policy at issue in *Summers* had a date and the term 'date of issue' clearly printed on the face of the formal policy. *Id.* at 1311, 1313. Midland's policy had a date and the term "Issue Date" printed on its face. While the policy issued by Midland does define date of issue, as stated previously, that definition does more to create than to eliminate an ambiguity.

The basis for the ambiguity in *Summers,* and what the definition in the Midland policy failed to eliminate, was that "the Receipt made certain provisions effective on

[one date] and the policy made these provisions effective on [another]...." *Id.* at 1313. Midland contends that the phrase in the conditional receipt that "the insurance protection applied for shall ... take effect ...." does not incorporate the suicide clause contained in the "Exec. Select–21" policy for which Thomas Hogan had applied. Midland argued at oral argument and in its brief that:

> If Dr. Hogan's death had occurred between April 29, 1983 and June 18, 1983, and if his application satisfied the terms of the conditional receipt, to wit, payment of the first month's premium and satisfactory evidence provided that he was insurable according to Midland's underwriting standards, Midland would be obligated to pay the $100,000.00 described in the receipt, irrespective of the cause of death.[2]

If Midland's reasoning was followed, then one could apply for a life policy, receive a binder, and then commit suicide that same day. If the binder took effect on the date of application, then the beneficiaries would be entitled to full recovery. This court is certain that a reasonable person in the position of the insured would not interpret the conditional receipt in this manner. *See Nationwide,* 136 Ga.App. at 675, 222 S.E.2d at 831. This court is equally certain that in such a situation Midland would assert that it had the benefit of the suicide clause under the conditional receipt. *See Summers,* 696 F.2d at 1313. The natural and obvious meaning of "the insurance protection applied for ...." would be one that includes any exclusions from coverage under plan "Exec. Select–21," the insurance protection for which Thomas Hogan had applied. *Lester v. Great Central Insurance Co.,* 138 Ga.App. 353, 355, 226 S.E.2d 149, 150 (1976) (the "natural, obvious meaning is to be preferred ...").

In deciding that the suicide exclusion clause should run from the date coverage became effective under the conditional receipt, this court is influenced by the public

**2.** Recovery under the conditional receipt issued by Midland was limited to $100,000.

policy behind Georgia statutory law. The Georgia Code provides that:

(a) No policy of life insurance ... shall be delivered or issued for delivery in this state if it contains a provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a special status, except that the policy may contain provisions excluding or restricting coverage as specified therein in event of death under any one or more of the following circumstances:

...

(5) Death within two years from the date of issue of the policy as a result of suicide, while sane or insane.

O.C.G.A. § 33–25–5(a)(5) (Michie 1982). The policy behind the statute is to preserve actuarial stability. 1B J. Appleman, *Insurance Law and Practice* § 492, at 346 (1981). To allow an insurance company to extend the application of a suicide clause for a period greater than two years from the attachment of the risk of loss would frustrate the policy behind this statute. *See Motta,* 404 F.2d at 169. Thus, when coverage under "the insurance protection applied for ..." begins on the date the conditional receipt is issued, this court construes "date of issue" as used in section 33–25–5(a)(5) to mean the date coverage becomes effective under the conditional receipt. This construction will effectuate the legislative purpose behind the statute. *City of Fitzgerald v. Newcomer,* 162 Ga. App. 646, 648, 291 S.E.2d 766, 768 (1982) ("Statutes are not contracts and it is the intent of the legislature and not of any other 'party' which is decisive in their construction."); O.C.G.A. § 1–3–1(a) (Michie 1982).

Midland contends that it avoids any conflict with the statute because the conditional receipt and formal policy form two separate contracts. Midland has cited a number of cases that state:

A binder is a contract of insurance in praesenti, temporary in its nature, intended to take the place of an ordinary policy until the same can be issued. It is a short method of issuing a temporary policy for the convenience of all parties, to continue, unless sooner canceled, until the execution of a formal policy.

*Fort Valley Coca-Cola Bottling Co. v. Lumbermen's Mutual Casualty Co.,* 69 Ga.App. 120, 124, 24 S.E.2d 846, 849 (1943), *See also Cincinnati Insurance Co. v. Stuart,* 139 Ga.App. 80, 81–82, 227 S.E.2d 771, 773 (1976) Midland also relies on *Sawyer v. Citizens and Southern National Bank,* 164 Ga.App. 177, 181, 296 S.E.2d 134, 138 (1982), which states that "[a] binder is an independent contract, separate and distinct from the permanent policy which may be issued on the basis of the written application." *Id.*

Midland contends that these cases establish the policy and the conditional receipt as two separate insurance contracts. Under this reasoning, since the insurance policy is viewed as a separate contract, then the legislative purpose of section 33–25–5(a)(5) is not frustrated when the two year period in the suicide clause is determined to operate from the date of issue specified in the formal policy, June 18, 1983. Presumably Midland would apply this same reasoning to a conditional receipt that incorporates the suicide exclusion contained in the formal policy. Since the conditional receipt is a separate contract, then the policy behind section 33–25–5(a) is not frustrated. Thus, there would be two separate contracts, each containing a suicide clause.

This court rejects Midland's argument for a number of reasons. The cases cited by Midland address the issue of when or if coverage attached under an insurance policy; they do not address the question whether the loss is excluded from coverage. *Fort Valley Coca-Cola,* 69 Ga.App. 120, 24 S.E.2d 846 (action for failure to issue burglary policy); *Stuart* 139 Ga.App. 80, 227 S.E.2d 771 (Insured's boat was covered under an oral binder. Coverage was not pursuant to an endorsement or rider on an existing policy; therefore, terms of existing policy were irrelevant). *Sawyer,* 164 Ga.App. 177, 296 S.E.2d 134 (misrepresentations in insured's written application for

automobile insurance irrelevant when loss occurred while binder was in effect and there were no misrepresentations in connection with issuance of the binder). The cases do not address the fact that a conditional receipt that extends the operation of a suicide clause for more than two years would have the effect of upsetting the actuarial stability that section 33–25–5(a) seeks to preserve.

Furthermore, Midland's argument still does not resolve the ambiguity created when the receipt purports to make certain provisions effective on one date and the policy purports to make the same provisions effective on a different date. This ambiguity must be construed against the insurer, and exceptions and exclusions must be construed most strongly against the insurer. *Coleman*, 121 Ga.App. at 511–12, 174 S.E.2d at 352.

Midland has cited two other cases, *Loyda v. New England Life Insurance Co.*, 409 F.Supp. 754 (D.P.R.1976); *Byram v. Equitable Life Assurance Society*, 180 F.Supp. 620 (W.D.La.1959), *aff'd*, 274 F.2d 822 (5th Cir.1960), that are distinguishable from the present case on the question of ambiguity.

Accordingly, this court finds that the two year period in the suicide clause commenced on the date coverage became effective under the conditional receipt, April 29, 1983; therefore, the insured's death on May 15, 1985 occurred more than two years after commencement of the suicide clause.

Defendants' motion for summary judgment is hereby granted, and plaintiff's motion for summary judgment is denied. It is ORDERED that defendants are entitled to recover $250,000. from plaintiff and costs.