**MASSACHUSETTS BAY INSURANCE COMPANY, Plaintiff,**

v.

**PHOTOGRAPHIC ASSISTANCE CORPORATION, Defendant.**

**No. 1:89–cv–469–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 12, 1990.

Clayton Henson Farnham, Paul W. Burke, Drew Eckl & Farnham, Atlanta, Ga., for plaintiff.

Benjamin Louis Weinberg, Jr., Frederick Newman Sager, Jr., Long Weinberg Ansley & Wheeler, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

On January 6 and 7, 1989, a fire severely damaged defendant's business. The central issue in this declaratory judgment action is whether plaintiff canceled defendant's insurance policy prior to the fire. Jurisdiction is predicated on 28 U.S.C. § 1332. Currently before the court is plaintiff's motion for summary judgment. For the reasons stated below, the court PARTIALLY GRANTS and PARTIALLY DENIES plaintiff's motion for summary judgment.

FACTS

Plaintiff Massachusetts Bay Insurance Company ("Mass Bay") is a corporation organized under the laws of the State of Massachusetts with its principal place of business also in Massachusetts.

Defendant Photographic Assistance Corporation ("Photographic") is a Georgia Corporation with its principal place of business in Georgia.

Plaintiff first issued insurance policy number Z 091 9611 ("Policy") to defendant in July 1987. Coverage under the initial term ran until July 9, 1988. The parties renewed the Policy in July, 1988 to extend coverage through July, 1989.

The insurance policy contained a mortgage clause, naming Fleet Finance Inc. of Georgia ("Fleet" or "mortgagee") as mortgage holder. The Policy provided further that if the insurer canceled the Policy for insured's failure to pay premiums, the insurer would give separate written notice to the mortgagee. Policy, p. 7, ¶ 2(f).[1]

---

1. Neither party submitted a copy of the insurance policy with its pleadings. The court therefore contacted plaintiff's counsel by telephone on January 29, 1990 and requested that counsel provide the court with a copy of the Policy. The court received a copy of the Policy on January 30, 1990.

At the outset, defendant entered an insurance premium finance agreement with AFCO Credit Corporation ("AFCO").[2] Pursuant to the terms of the premium finance agreement, defendant made premium payments due on the Policy directly to AFCO. The premium finance agreement contained a power of attorney from Photographic enabling AFCO to cancel Photographic's Policy with Mass Bay.

Plaintiff contends that, pursuant to O.C. G.A. §§ 33–22–13(a)–(c), AFCO exercised its power of attorney to cancel the Policy by mailing defendant a notice of intent to cancel on December 6, 1988, followed by a notice of cancellation on December 20, 1988. The notice of cancellation allegedly mailed on December 20, 1988 stated that the Policy would be canceled on December 27, 1988.

Defendant denies receiving either the December 6 or December 20, 1988 mailings from AFCO. Defendant does, however, acknowledge receiving a notice of cancellation from Mass Bay dated December 30, 1988, setting the cancellation date of the Policy as January 10, 1989. To further complicate matters, defendant alleges that AFCO sent defendant five other notices of cancellation in the preceding eighteen months, none of which operated to cancel the Policy. Defendant's Response to Plaintiff's Motion for Summary Judgment ("Response"), p. 4, ¶ 2.

On January 6 and 7, 1989, a fire destroyed defendant's business. Plaintiff filed this declaratory judgment action seeking a determination that it is not liable for payment under Policy Z 091 9611. Plaintiff contends that AFCO properly canceled the Policy, effective December 27, 1988. Plaintiff now moves for summary judgment.

Defendant opposes plaintiff's motion for summary judgment on numerous grounds. First, defendant contends that, as a matter of law, O.C.G.A. § 33–22–13(d) requires the insurer, not the premium finance company, to set the effective date of cancellation of the insured's policy. Next, defendant argues that even if the premium finance company could cancel the Policy, defendant never received the notices required by O.C. G.A. §§ 33–22–13(b) and (c). Third, defendant maintains that plaintiff's prior course of dealing with defendant created a quasi new contract barring it from canceling defendant's Policy without additional notice of intent to abide by the original contract. Finally, defendant maintains that the notice of cancellation which plaintiff sent to defendant on December 30, 1988 created an insurance binder extending coverage through January 10, 1989.

## DISCUSSION

### I. *Standard of Review*

This court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that the non-moving party lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." Once the movant has met this burden, the opposing party must present evidence establishing a material issue of fact. *Id.* The non-moving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

While all evidence and factual inferences should be viewed in a light most favorable to the non-moving party, *Rollins v. Tech-South, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judg-

---

**2.** Under Georgia law an insurance premium finance agreement is defined as:

> an agreement by which an insured or prospective insured promises to pay a premium finance company the amount advanced or to be advanced under the agreement to an insur-

> er or to an insurance agent or insurance broker in payment of premiums on an insurance contract together with a service charge as authorized and limited by this chapter.

O.C.G.A. § 33–22–2(1).

ment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). An issue is not genuine if unsupported by evidence or created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, an act is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Rollins*, 833 F.2d at 1528.

## II. *Application*

### A. Statutory Procedure for Cancellation When Mortgagee is Involved

■ In its Response to Plaintiff's Motion for Summary Judgment, defendant argues that O.C.G.A. § 33–22–13(d) precludes a premium finance company from setting the date of cancellation of an insurance contract when a mortgagee is involved. By order dated October 16, 1989, the court deferred ruling on plaintiff's motion for summary judgment and directed the parties to file supplemental briefs concerning the interpretation of O.C.G.A. § 33–22–13(d). This Code section provides:

> All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under this Code section. The insurer shall give

the prescribed notice on behalf of itself or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days required to complete the cancellation.

O.C.G.A. § 33–22–13(d). The court requested that the parties address whether section 33–22–13(d) "requires the *insurer*, as opposed to the premium finance company, to set the effective date of cancellation of the insurance policy in cases in which notice of cancellation must be given to a mortgagee." Order, p. 2. The court also requested that the parties detail which statutory, regulatory or contractual restrictions apply in the case at hand. *Id.* Having considered the parties' supplemental briefs on the applicability of section 33–22–13(d), the court now determines that, as a matter of law, the premium finance company may cancel an insurance contract with respect to an insured when a mortgagee is involved.

Under Georgia law, a premium finance company possessing a power of attorney executed by the insured may cancel the insured's policy.[3] *See Leader National Insurance Co. v. Gaydon*, 185 Ga.App. 322, 363 S.E.2d 859 (1987). "Rather than characterizing the premium finance company as the agent of the insurer, Georgia law has established that a premium finance company stands in the shoes of the insured when cancelling an insurance policy." *Georgia Insurance Co. v. White*, 190 Ga.App. 208, 210, 378 S.E.2d 523 (1989). Thus, AFCO in accordance with the power of attorney given by defendant, had the right to cancel defendant's policy pursuant to O.C.G.A. §§ 33–22–13(b)–(c).[4]

---

**3.** O.C.G.A. § 33–22–13(a) provides:

When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the premium finance company unless the cancellation is effectuated in accordance with this Code section.

**4.** O.C.G.A. § 33–22–13(b) provides:

Not less than ten days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten-day period. A copy of said notice shall also be sent to the insurance agent or insurance broker indicated on the premium finance agreement.
O.C.G.A. § 33–22–13(c) provides:
After expiration of such ten-day period, the premium finance company may thereafter in the name of the insured cancel such insur-

Defendant does not dispute a premium finance company's general right to cancel an insurance policy as agent of the insured. Defendant maintains, however, that when a mortgagee is involved, only the insurer can cancel the insurance policy. In support of this argument, defendant points to the last sentence of section 33–22–13(d): "The insurer ... shall determine the effective date of cancellation taking into account the number of days required to complete the cancellation."

Plaintiff contends that section 33–22–13(d) does not alter the premium finance company's right to terminate the insurance contract on behalf of the insured pursuant to sections 33–22–13(b) and (c). Plaintiff asserts that this section merely requires that the insurer notify the mortgagee of the cancellation of the insured's policy. According to plaintiff, cancellation of insurance for the insured and cancellation of insurance for the mortgagee are two distinct procedures. Thus, after the premium finance company terminates the insurance coverage as to the insured, the insurer must notify the mortgagee and set the date of cancellation of coverage as to the mortgagee. But, plaintiff argues, the insurance company's failure to cancel the mortgagee's coverage will not render ineffective the finance company's cancellation of the insured's coverage.

The court believes that plaintiff's interpretation best comports with the language and intent of O.C.G.A. § 33–22–13(a). In addition, plaintiff's suggested reading promotes several important policy concerns.

### 1) Language

The language of sub-section (d) admittedly lacks precision. Subsection (d) mentions "cancellation" several times without indicating whether "cancellation" refers to the insured's policy or the mortgagee's standard mortgage clause.[5] However, by analyzing the language of subsection (d) in conjunction with the full body of section 33–22–13, its meaning becomes evident. The second sentence of subsection (d) provides that the insurer will send notice to the mortgagee "on or before the second business day after the day it receives the notice of cancellation from the premium finance company...." The notice of cancellation that the insurer receives from the premium finance company informs the insurer of "... the date and time the policy is to be canceled [by the premium finance company acting as agent for the insured] ..." O.C.G.A. § 33–22–13(c). Upon receipt of this notice from the premium finance company, the insurer must send notice to the mortgagee and "determine the effective date of cancellation taking into consideration the number of days required to complete the cancellation." O.C.G.A. § 33–22–13(d). This date of "cancellation" to be set by the insurance company cannot refer to the insured's policy because the date of that cancellation has already been established by the premium finance company. *Id.* Thus, the "cancellation" to be set

---

ance contract or contracts by mailing or delivering to the insurer a notice of cancellation; and the insurance contract shall be canceled as if the notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company, when mailing or delivering notice to the insurance company to cancel the policy, shall simultaneously mail notice to the insured, notifying him of the action taken. Such notice to the insured shall contain the date and time the policy is to be canceled, which date shall not be prior to the date of mailing of such notice, and shall inform the insured that any payment received after the mailing or delivery of notice to the insurance company to cancel the policy will not reinstate the policy. The notice may contain information to the effect that the premium finance company will make a request to the insurance company to

reinstate the policy. Language sufficiently clear and specific so that a person of average intelligence can understand the action being taken by the premium finance company shall be used. The notice to the insured required by this Code section shall be mailed to the last address of record of the insured and shall be dispatched by at least first-class mail and receiving the receipt provided by the United States Postal Service or such other evidence of mailing as prescribed or accepted by the United States Postal Service.

5. Insurance law typically recognizes that a union or standard mortgage clause is a separate agreement from the primary insurance contract. *See* Couch on Insurance 2d (Rev. ed.) §§ 42:683–684; *Aetna Life & Casualty Co. v. Charles S. Martin Distributing Company, Inc.,* 120 Ga.App. 133, 169 S.E.2d 695 (1969).

by the insurer must refer to the cancellation of the insurer's obligation to the mortgagee. The court believes that subsection (d) contemplates two distinct cancellations: The first being cancellation of the insured/insurer contract by the premium finance company, the second being the cancellation of the mortgagee/insurer contract by the insurer.

### 2) Purpose

This reading of the statute also comports with the intended purpose of the statute. O.C.G.A. § 33–22–13(d) is concerned in part with the mortgagee's rights. One purpose of the statute is to assure that the mortgagee learn promptly of the insured's failure to pay premiums and the consequential termination of the insured's policy coverage. The insurer, as the issuer of the mortgagee's insurance contract, is in the best position to provide such notice. Unlike the insured, the mortgagee will not have executed a power of attorney allowing the premium finance company to cancel on its behalf. Thus, the premium finance company has no obligation to provide notice to the insurer. A second related purpose of subsection (d) is to afford the insurer a means of cancelling the policy with the mortgagee. As stated above, the premium finance company only has authority to cancel the insured's coverage pursuant to the power of attorney. Thus, subsection (d) provides the insurer with a mechanism for terminating its liability to the mortgagee upon default of the insured.

### 3) Policy Concerns

Defendant reads O.C.G.A. § 33–22–13(d) to require the insurer to terminate all insurance contracts any time a mortgagee is involved. Thus, a premium finance company would not be permitted to terminate an insurance policy under the terms of sections 33–22–13(a)–(c) if a mortgagee were involved; only the insurer could effect cancellation. Such an arrangement would leave the premium finance company impotent in a situation in which the insured failed to pay premiums. The very reason the premium finance company executes a power of attorney is to protect itself should the insured default in its payments. It would be unfair to force the premium finance company to wait for the insurer to cancel its policy with the mortgagee before the premium finance company can terminate its relationship with the insured.

■ Finally, the insured has no real standing to argue that its contract should not be terminated until the mortgagee has received notice. Only the mortgagee is harmed by the insurer's failure to notify it of the termination. The insured, who receives statutory notification in accord with O.C.G.A. §§ 33–22–13(b) and (c) should not be heard to complain that its policy is terminated prior to the mortgagee's receipt of notice. The mortgagee is the entity being harmed and the mortgagee has a remedy against the insurer.

### B. Contractual, Statutory and Regulatory Restrictions

The court has determined that, as a matter of law, a premium finance company can cancel an insurance policy even if a mortgagee is involved. The court now turns to the facts of the case at hand to determine whther any contractual, statutory or regulatory restrictions impinge on the statutory framework of section 33–22–13(d), thereby limiting the premium finance company's right to terminate coverage.

### 1) Contractual Restrictions

■ The insurance policy executed by Mass Bay in favor of Photographic Assistance contains a mortgage clause, specifically naming Fleet Finance Inc. of Georgia as mortgage holder ("mortgagee"). Under the terms of the Policy, plaintiff Mass Bay agrees to give the mortgagee notice of cancellation:

> If we [Mass Bay] cancel this policy, we will give written notice to the mortgage holder at least:
>
> (1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or
>
> (2) 30 days before the effective date of cancellation if we cancel for any other reason.

Policy, p. 7, ¶ 2(f).

This contractual provision requires the insurer to provide the mortgagee with no-

tice of cancellation. However, nothing in this clause mandates that the insurer set the cancellation date for the *insured's* coverage. Thus, the contractual provision does not alter the normal operation of sections 33–22–13(b) and (c) which permit a premium finance company to terminate an insured's contract.

### 2) Statutory Restrictions

■ Only one statutory provision arguably has any impact on the operation of section 33–22–13. O.C.G.A. § 33–24–44, entitled "Cancellation of Policies Generally" provides:

(d) When a policy is canceled for failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums for a policy or any installment of premiums due, whether payable directly to the insurer or indirectly to the agent, or when a policy that has been in effect for less than 60 days is canceled for any reason, the notice requirements of this Code section may be satisfied by delivering or mailing written notice to the named insured and any lienholder, where applicable, at least ten days prior to the effective date of cancellation in lieu of the number of days' notice otherwise required by this Code section.

(e) Notice to the insured shall not be required by this Code section when a policy is canceled by an insurance premium finance company under a power of attorney contained in an insurance premium finance agreement which has been filed with the insurer in accordance with the provisions of Chapter 22 of this title. However, the insurer shall comply with the provisions of subsection (d) of Code Section 33–22–13 pertaining to notice to a governmental agency, mortgagee, or other third party. Such notice shall be delivered in person or by depositing the notice in the United States mails to be dispatched by at least first-class mail to the last address of record of such governmental agency, mortgagee, or other last address of record of such governmental agency, mortgagee, or other third party and receiving the receipt provided by the United States Postal Service or such other evidence of mailing as prescribed or accepted by the United States Postal Service.

Defendant admits that section 33–24–44(e) does not require a premium finance company to give notice to the insured pursuant to section 33–24–44(d) when the premium finance company follows the procedures of section 33–22–13. Defendant contends, however, that section 33–24–44 imposes a requirement that the insurer give ten days written notice to a mortgagee. The court rejects defendant's reading of the statute. Section 33–24–44(e) explicitly states that compliance with section 33–22–13(d) is all that is required for an insurer to cancel with respect to a mortgagee. Section 33–24–44(e) simply does not apply in the case at hand.

### 3) Regulatory Restrictions

The parties agree that no regulatory restrictions apply in this case.

In conclusion, the court finds that no contractual, statutory or regulatory restrictions impinge on AFCO's right to set the cancellation date of the Policy for the defendant in accordance with sections 33–22–13(a)–(c). While Mass Bay is contractually required to give ten days written notice to the mortgagee, this contractual requirement does not affect the separate cancellation of the insured's policy by AFCO.

### C. Issues of Fact

The court now considers whether the defendant's insurance policy was canceled effectively in the case at hand. Plaintiff argues that AFCO properly sent a notice of intent to cancel and a notice of cancellation in accordance with O.C.G.A. §§ 33–22–13(b) and (c), and that plaintiff properly sent notice to the insured in accordance with O.C.G.A. § 33–22–13(d).

### 1) Receipt of Notices

■ Plaintiff claims that it complied with O.C.G.A. § 33–22–13 by mailing a notice of intent to cancel on December 6, 1988 and a notice of cancellation on December 20, 1988. Defendant claims that it never received either notice. The court finds, how-

ever, that defendant fails to demonstrate a material issue for trial surrounding the receipt of notices.

Plaintiff supports its assertion that it mailed the notices by submitting affidavits, copies of business records and proof of mailings. Linda Hamby, who works in the Account Administration Department of AFCO avers that she mailed a notice of intent to cancel to Photographic Assistance on December 6, 1988. Hamby Affidavit, ¶ 3. Attached to the Hamby Affidavit is a document apparently created by Ms. Hamby during the course of business which purportedly certifies that Ms. Hamby mailed a notice of cancellation to defendant on December 6, 1988. AFCO employee Ruby Richardson avers that she sent the notice of cancellation to defendant on December 20, 1988. Attached to the Richardson Affidavit is a copy of proof of mailing by first class mail signed by a postal employee and stamped December 20, 1988. AFCO's mailing procedure comports with the requirements of O.C.G.A. § 33–22–13(c).[6] Defendant submits the affidavit of its chief bookkeeper Samuel Moyers who states that Photographic Assistance received neither the December 6 nor the December 20 notice. However, the court finds that this bald assertion fails to rebut the evidence of mailing submitted by plaintiffs. Defendant cannot survive summary judgment on this issue by simply asserting that it never received the notices when plaintiff has strong evidence that both notices were, indeed, mailed to defendant.

### 2) Quasi New Contract

■ Defendant's next argument in opposition to plaintiff's motion for summary judgment is that plaintiff's and AFCO's course of conduct with defendant established a quasi new contract such that the December 20, 1988 notice of cancellation essentially functioned as a request for payment of premiums. Defendant claims that

AFCO had a policy of mailing notices of cancellations "to induce Photographic Assistance Corporation to forward the payments due AFCO under the Premium Finance Agreement when such payments were overdue." Response, p.p. 2–3. Defendant alleges that AFCO mailed five such notices of cancellation between July, 1987 and January, 1989. Defendant claims that after receipt of such notices, defendant would pay the amount due:

> [P]ayments, even if late, were accepted and no attempt was made by either AFCO or Massachusetts Bay to assert that, pursuant to O.C.G.A. § 33–22–13, a cancellation had taken place on September 2, 1987, November 4, 1987, April 4, 1988, May 4, 1988 or November 1, 1988.

*Id.*

Defendant contends that plaintiff departed from the terms of its contract with defendant by accepting premium payments and continuing coverage after AFCO had sent notices of cancellation to defendant. Georgia law provides that if parties depart from the terms of a contract and receive money under the departure, neither can recover money under the letter of the agreement without providing reasonable notice to the other of the intention to rely on the explicit terms of the agreement. O.C.G.A. § 13–4–4. Thus, defendant maintains that plaintiff could not allow AFCO to mail five notices of cancellation that had no effect on defendant's coverage then suddenly assert that the sixth notice of cancellation had the effect of terminating coverage.

The court finds that an issue of fact remains for trial as to whether plaintiff's course of dealings with defendants essentially created a quasi new contract. "... [W]here by a course of conduct, one leads another to believe that he will not insist upon the strict terms of the contract, he will not be heard to complain because the other contracting party relies upon his ac-

---

**6.** O.C.G.A. § 33–22–13(c) requires that the premium finance company mail notice of cancellation:

... to the last address of record of the insured ... by at least first-class mail and receiving the receipt provided by the United States Post-

al Service *or such other evidence of mailing as prescribed or accepted by the United States Postal Service.* (emphasis added).

Plaintiff mailed the notice by first-class mail and retained a proof of mailing certificate signed by a postal employee.

quiescence as evidenced by a course of conduct in similar situations." *Southern Life Insurance Company of Georgia v. Citizens Bank of Nashville*, 91 Ga.App. 534, 86 S.E.2d 370 (1955). Plaintiff's decision to continue coverage for defendant after AFCO had sent numerous notices of cancellation to defendant could reasonably be interpreted by a jury as creating a quasi new contract. Of course, for defendant to succeed on a claim that the parties had entered a quasi new contract pursuant to O.C.G.A. § 13–4–4, it would have to demonstrate that the parties mutually agreed to a new contract with distinct and definite terms. *Fair v. General Finance Corporation of Georgia*, 147 Ga.App. 706, 250 S.E.2d 9 (1978); *Continental Casualty Co. v. Union Camp Corp.*, 230 Ga. 8, 195 S.E.2d 417 (1973). However, a jury should determine whether a new contract is created. *Vaughan v. Wrenn Brothers, Inc.*, 163 Ga.App. 383, 294 S.E.2d 609 (1982); *Prudential Insurance Company of America v. Nessmith*, 174 Ga.App. 39, 329 S.E.2d 249 (1985).

### 3) Insurance Binder

■ Finally, defendant contends that Mass Bay mailed a notice of cancellation to defendant on December 30, 1988, establishing January 10, 1989 as the termination date for coverage under the Policy. Defendant maintains that, notwithstanding AFCO's separate notice of cancellation mailed to defendant on December 20, 1988, Mass Bay's notice dated December 30, 1988 created an insurance binder.

An insurance binder is a "contract of insurance, albeit a temporary, sketchy, and informal contract, which is intended to give temporary protection . . . ." *Sawyer v. Citizens & Southern National Bank*, 164 Ga. App. 177, 181, 296 S.E.2d 134 (1982). The party seeking to demonstrate the existence of a binder must show that the parties had a meeting of the minds. *Ray v. Georgia Farm Bureau Mutual Insurance Co.*, 176 Ga.App. 776, 337 S.E.2d 779 (1985). Thus, in the case at hand, defendant would have to establish that the parties had an agreement to extend coverage through January 10, 1988.

The court finds that a material issue of fact remains as to what plaintiff intended to do by mailing the notice of cancellation to defendant on December 30, 1988, after AFCO had already mailed a notice of cancellation to defendant on December 20, 1988. Mass Bay claims that its December 30, 1988 was merely a notice to the mortgagee in accordance with O.C.G.A. § 33–22–13(d). However, a jury could reasonably conclude that the plaintiff's intent was to provide coverage for defendant through January 10, 1988. Accordingly, the court denies summary judgment for plaintiff on this issue.

### CONCLUSION

For the reasons stated above, the court PARTIALLY GRANTS and PARTIALLY DENIES plaintiff's motion for summary judgment. The court construes O.C.G.A. § 33–22–13 to allow a premium finance company to terminate coverage under an insurance policy notwithstanding the existence of a mortgagee. O.C.G.A. § 33–22–13(d) merely requires that the insurer provide separate notice of cancellation to the mortgagee and set the effective date of cancellation of the mortgagee's coverage.

Issues remaining for trial in this action include (1) whether AFCO and plaintiff's course of dealings with defendant created a quasi new contract governed by O.C.G.A. § 13–4–4; and (2) whether the December 30, 1988 notice of cancellation sent by plaintiff to defendant created an insurance binder extending coverage through January 10, 1989.

SO ORDERED.