## A94A0860. GILL PLUMBING COMPANY v. IMPERIAL PREMIUM FINANCE COMPANY, INC.
(445 SE2d 840)

SMITH, Judge.

Appellant Gill Plumbing Company brought suit alleging breach of contract, fraud, conversion and conspiracy against various companies and persons for their collective failure to timely procure certain insurance on Gill Plumbing's behalf. Appellee Imperial Premium Finance Company, Inc. ("Imperial"), an insurance premium finance company governed under the Insurance Premium Finance Company Act (OCGA § 33-22-1 et seq.), moved for summary judgment, which was granted, and Gill Plumbing appeals.

Gill Plumbing contracted with defendant Insurance Concepts, Inc. ("ICI"), to procure workers' compensation and general liability/commercial property insurance. ICI then arranged to place Gill Plumbing's policies through National Insurance Associates, Inc. ("National Insurance").[1]

The total premium for the various policies was $129,000. Gill Plumbing made a down payment of $37,388, which was received and deposited by ICI. National Insurance executed an "installment loan premium finance agreement" with Imperial on Gill Plumbing's behalf

---

[1] In addition to the companies named in this appeal, Gill Plumbing seeks recovery from individual agents for ICI and National Insurance. *Solely* for the sake of simplicity in addressing the issues raised in this appeal, we impute the actions of individual agents to the company they purportedly represented at the time those actions were taken. However, we acknowledge that the extent of liability among individual and corporate defendants other than Imperial remains an open question.

for the remaining balance of $91,612. The agreement provided that the financed amount would be used to pay the balance owed to Transamerica Insurance Company for the commercial general liability and umbrella policies effective April 3, 1991, and that owed to the National Council on Compensation Insurance ("NCCI") for the assigned risk workers' compensation policy effective April 4, 1991.

Under the terms of the agreement, Gill Plumbing was required to make nine monthly premium installment payments to Imperial of $10,827.26 each from May 3, 1991 through January 3, 1992, which included finance charges of $5,833.34. The workers' compensation premium totalled $77,251, and the combined Transamerica premiums totalled $51,749.

Gill Plumbing received a written notice from Imperial indicating acceptance on April 12, 1991. The notice contained the following statement: "We are pleased to notify you that we have accepted your premium finance agreement subject to verification by the insurance companies. We have credited the down payment to your account.

"If your Premium Finance Agreement was signed by your insurance Broker, such Agent or Broker warrants that he is authorized to act as Agent for you in the signing of the Premium Finance Agreement and has forwarded your down payment check for credit to your account. You may disaffirm the Premium Finance Agreement by mailing to Imperial, at the address shown above, notice of this disaffirmance within 5 days of the date of mailing of this notice. If no disaffirmance is received within the said five days, the Premium Finance Agreement, as signed by your insurance Agent or Broker, shall be as binding an obligation as if the Premium Finance Agreement was signed by you.

"The security for this financing is the unearned premiums on the policies financed.

"The finance charge begins to accrue as of the earliest policy effective date.

"Do not confuse this premium finance loan with the type of credit that revolves from month to month and permits late payments with a penalty. IF YOU DO NOT PAY YOUR INSURANCE PREMIUM FINANCE INSTALLMENTS ON OR BEFORE THE DUE DATES, YOU MAY RISK LOSING YOUR INSURANCE PROTECTION." On April 15, 1991, Imperial paid $91,612 directly to National Insurance. Gill Plumbing asserts that it relied on Imperial's notice to it that the agreement was "subject to verification by the insurance companies," and therefore the disbursement of funds to National Insurance led Gill Plumbing to believe that its coverage had been verified by Imperial.

Gill Plumbing's workers' compensation coverage was not effectively placed by NCCI until September 24, 1991, leaving a gap in cov-

erage from April 3, 1991 to September 23, 1991. Imperial was not made aware of the gap in coverage until contacted by Gill Plumbing. When questioned about the gap in coverage, Imperial advised Gill Plumbing that if it stopped making the premium installment payments, Imperial would cancel all of its policies subject to their agreement. The agreement appointed Imperial as Gill Plumbing's "attorney-in-fact with complete authority to cancel the policies. . . ."

In January 1992, Gill Plumbing received a notice from workers' compensation carrier Aetna Insurance Company that National Insurance had made only a 50 percent premium deposit of $32,276 on the total workers' compensation premium of $64,550 and that the other 50 percent remained due and owing. Gill Plumbing was required to pay this sum to Aetna in addition to the installments paid to Imperial in order to keep its insurance in force. Gill Plumbing did in fact fulfill its contract with Imperial. Nevertheless, it was without workers' compensation coverage for several months, during which time three uninsured claims accrued.

Gill Plumbing does not assert that Imperial knowingly participated with the other defendants to defraud it. Instead, it essentially contends that Imperial misled it into believing that it was insured, and wrongfully disbursed the funds to National Insurance instead of directly to Transamerica and NCCI. The question to be resolved in this appeal is not whether Gill Plumbing has been wronged and is entitled to a recovery for its injury, but merely whether the premium finance company involved in the transaction may be held liable.

1. Gill Plumbing argues that Imperial breached a contractual duty to verify coverage. We disagree. The nature of the agreement between Gill Plumbing and Imperial is straightforward. It provides that "[i]n consideration of the premium payments to be made by Imperial to [the insurers] *or the above named agent or broker,* Borrower . . . promises to pay Imperial at its above address, the Total of Payments stated . . . according to the payment schedule agreed to and the provisions on both the front and back of this Agreement." (Emphasis supplied.) The named agent was National Insurance. It is undisputed that Imperial made a $91,612 premium payment to National Insurance as provided in the agreement.

The agreement also provides that the *borrower* "represents that Policies or binders listed above have been issued and are in full force and effect." The agreement clearly provides that National Insurance is Gill Plumbing's agent "and not an agent of Imperial." It likewise provides that "Imperial is not legally bound by any representation, oral or written, made by the agent or broker to Borrower. Imperial is not an agent of any insurer and will not be responsible for any act, error or omission of an insurer."

Contrary to Gill Plumbing's assertions, it is *Imperial* that was

assured by Gill Plumbing's representation under the contract that the policies in question were in full force and effect. When read as a whole, there is no question that Imperial's primary security interest under the agreement was the unearned premiums under the policies named in the agreement. Construing the notice of acceptance in light of the plain language of the agreement itself, there is no question that the acceptance was "subject to verification by the insurance companies" to provide a shield for the protection of Imperial's secured interest, and not as a sword to leave Imperial totally without recourse in the event it failed to act in its own best interest and verify placement of coverage. The plain language of the agreement reveals that it obligated Imperial to make premium payments to the insurers *or* to Gill Plumbing's agent. Imperial fully performed its contractual obligation to Gill Plumbing. The trial court properly granted summary judgment as to this count.

2. Gill Plumbing contends the trial court erred in granting Imperial's motion for summary judgment on its claim for breach of fiduciary duty. Its position rests on the notion that the power of attorney granted to Imperial established a "fiduciary" relationship. The power of attorney language of the contract provides, in its entirety, as follows: "Borrower irrevocably appoints Imperial as its Attorney-In-Fact with complete authority to cancel the Policies, to demand, collect, sue for, receive and give receipt for all sums assigned above to Imperial and to execute and deliver on Borrower's behalf all documents, forms and notices relating to the Policies in furtherance of this Agreement. Any money received as Attorney-in-Fact shall be subtracted from any amount owed to Imperial by Borrower and, if there is a surplus, it shall be paid to Borrower if it is greater than $1.00."

The extent of the power of attorney on which Gill Plumbing relies is severely limited by its express terms and is otherwise controlled by the procedure for cancellation mandated in OCGA § 33-22-13. As limited by statute, the power of attorney granted Imperial does not render it a fiduciary to Gill Plumbing. Rather, the proper view of Imperial's relationship to Gill Plumbing is found in OCGA § 10-6-21: "The agent shall act within the authority granted to him, reasonably interpreted; if he shall exceed or violate his instructions, he does it at his own risk, the principal having the privilege of affirming or dissenting, as his interest may dictate. In cases where the power is coupled with an interest in the agent, unreasonable instructions, detrimental to the agent's interest, may be disregarded."

Gill Plumbing has alleged no abuse or violation of the limited power of attorney granted to Imperial, and we find no merit in the notion that the grant of this limited power imposes duties exceeding the scope of the power itself. The trial court did not err in granting summary judgment as to this count. See *Heard v. Decatur Fed. Sav-*

*ings &c. Assn.*, 157 Ga. App. 130, 135 (5) (276 SE2d 253) (1981).
*Judgment affirmed. Pope, C. J., and McMurray, P. J., concur.*

DECIDED JULY 1, 1994.

Boyce, Ekonomou & Atkinson, Peter F. Boyce, Catherine M. Packwood, for appellant.
Troutman Sanders, Richard W. Morrell, C. Lee Ann McCurry, Daniel S. Reinhardt, for appellee.