ACCEPTED
03-13-00331-CV
5400996
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/22/2015 2:40:30 PM
JEFFREY D. KYLE
CLERK

No. 03-13-00331-CV

In the Court of Appeals
Third Judicial District of Texas
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/22/2015 2:40:30 PM
JEFFREY D. KYLE
Clerk

PLASMA FAB, LLC and RUSSELL McCANN,
*Appellants,*

v.

BANKDIRECT CAPITAL FINANCE, LLC, a Subsidiary of TEXAS
CAPITAL BANK, N.A., and SCOTTSDALE INSURANCE COMPANY,
*Appellees.*

## APPELLEE BANKDIRECT CAPITAL FINANCE, LLC'S MOTION FOR PANEL REHEARING AND MOTION FOR EN BANC RECONSIDERATION

On Appeal from the 250th Judicial District Court
of Travis County, Texas

D. Ferguson McNiel
State Bar No. 13830300
Sandra G. Rodriguez
State Bar No. 00790752
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002
(713) 758-3882; (713) 615-5493 (F)
fmcniel@velaw.com
srodriguez@velaw.com

Amy Tankersley
State Bar No. 24068623
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
(214) 220-7817; (214) 999-7817 (F)
atankersley@velaw.com

David B. H. Williams
*Admitted Pro Hac Vice*
David J. Strubbe
*Admitted Pro Hac Vice*
WILLIAMS BAX & SALTZMAN, P.C.
221 N. LaSalle Street, 37th Floor
Chicago, Illinois 60601
(312) 372-3311; (312) 372-5720 (F)
williams@wbs-law.com
strubbe@wbs-law.com

***Attorneys for Appellee BankDirect Capital Finance, LLC***

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES........................................................................ ii

ISSUE ON REHEARING.........................................................................iv

SUMMARY OF ARGUMENT ....................................................................1

FACTUAL SUMMARY.............................................................................3

ARGUMENT............................................................................................7

I.      The Court Erred in Finding that BankDirect Did Not Comply with
        Section 651.161. ..........................................................................7

        A.      The Court's Holding as to BankDirect Is Inconsistent with Its
                Holding as to Scottsdale.....................................................7

        B.      Existing Texas Law Holds That Technical Compliance with
                Section 651.161 Is Not Required. ......................................10

II.     The Court Erred in Relying on General Power of Attorney Law
        Regarding "Strict Construction" of Powers of Attorney.............13

CONCLUSION AND PRAYER.................................................................18

CERTIFICATE OF COMPLIANCE...........................................................19

CERTIFICATE OF SERVICE...................................................................20

# INDEX OF AUTHORITIES

Page(s)

**Cases**

*AVCO Corp. v. Interstate Southwest Ltd.,*
251 S.W.3d 632 (Tex. App.—Houston [14th] 2008, pet. denied)..................15

*California-Western States Life Ins. Co. v. Williams,*
120 S.W.2d 844 (Tex. Civ. App.—El Paso 1938, writ dism'd) ...................8, 9

*Cochran v. Paco, Inc.,*
606 F.2d 460 (5th Cir. 1979)....................................................................16

*First National Bank in Dallas v. Kinabrew,*
589 S.W.2d 137 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.)...................15

*Gill Plumbing Co. v. Imperial Premium Fin. Co.,*
445 S.E.2d 840 (Ga. Ct. App. 1994) .........................................................17

*Gittings, Neiman-Marcus, Inc. v. Estes,*
440 S.W. 2d 90 (Tex. Civ. App.—Eastland 1969, no writ) .........................15

*Gouldy v. Metcalf,*
12 S.W. 830 (Tex. 1889)..............................................................14, 15, 17

*In re Maplewood Poultry Co.,*
2 B.R. 550 (Bankr. D. Me. 1980).........................................................16, 17

*INAC Corp. v. Underwriters at Lloyd's,*
56 S.W.3d 242 (Tex. App.—Houston [14th Dist.]
2001, no pet.) ...............................................................................1, 3, 11, 12

*Maher v. Northland Ins. Co.,*
991 F. Supp. 878 (E.D. Mich. 1998) ........................................................ 7

*Massachusetts Bay Ins. Co. v. Photographic Assistance Corp.,*
732 F. Supp. 1572 (N.D. Ga. 1990).............................................................17

*Natho v. State of Texas,*
No. 3-11-00498-CR, 2014 WL 538787 (Tex. App.—Austin
Feb. 6, 2014, pet. ref'd)...............................................................................15

*Service Fin. v. Adriatic Ins. Co.*,
46 S.W.3d 436 (Tex. App.—Waco 2001), *judgm't vacated,*
51 S.W.3d 450 (Tex. App.—Waco 2001) ....................................................16

*Tetens v. Garcia*,
No. 03-96-00147-CV, 1996 WL 656443 (Tex. App.—Austin Nov. 13,
1996, no writ) ..............................................................................................16

*Wright v. Rumble*,
476 A.2d 1250 (N.J. Super. Ct. App. Div. 1984)........................................ 7

**Constitutions, Rules, and Statutes**

Acts of 2003, 78th Leg., R.S., ch. 1274, § 2, eff. April 1, 2005 ..........................11

Texas Insurance Code § 24.17(d)........................................................................11

Texas Insurance Code § 651.161 ...............................................................passim

Texas Insurance Code § 651.161(b)............................................................passim

Texas Insurance Code § 651.161(d)..................................................... 1, 11, 12, 13

## ISSUE ON REHEARING

Appellee BankDirect Capital Finance, LLC seeks rehearing on one of the three grounds upon which this Court reversed the district court's grant of summary judgment in BankDirect's favor:

In Appellants' Issue #2, Plasma Fab[1] asserted that the trial court erred in rendering judgment in BankDirect's favor where (1) Section 651.161(b) of the Texas Premium Finance Act requires an insurance premium finance company such as BankDirect to mail the insured a notice of intent to cancel an insurance contract 10 days prior to the date of cancellation, and (2) BankDirect mailed the notice of intent to cancel to Plasma Fab nine days prior to the date of cancellation.

**Issue:** Whether this Court erred in sustaining Plasma Fab's Issue #2,

(a)    by refusing to apply a rule that a notice prematurely dated should be treated as effective on the earliest date allowed by statute and holding that BankDirect failed to satisfy Section 651.161(b), even though the Court found elsewhere in its Opinion that at least 10 days lapsed between the date BankDirect mailed the notice of intent to cancel and the date the insurance policy was cancelled; and

(b)    where other Texas case law supports the application of a "substantial compliance" approach to a Section 651.161 notice requirement; and

---

[1] Appellants Plasma Fab, LLC and Russell McCann (collectively, "Plasma Fab").

(c)     where the power of attorney case law relied upon by the Court to rule against BankDirect does not support the Court's holding.

TO THE HONORABLE COURT OF APPEALS:

Appellee BankDirect Capital Finance, LLC ("BankDirect") moves both for panel rehearing and for en banc reconsideration of the Court's Opinion and Judgment dated May 8, 2015 ("Opinion," attached hereto as Appendix A).

## SUMMARY OF ARGUMENT

This case presents an issue of first impression in Texas: whether a premium finance company complied with the Texas Insurance Code § 651.161(b) requirement of ten days' notice when (1) this Court has found that ten days lapsed between the date the Notice of Intent to Cancel was mailed and the date the insurance policy was actually cancelled, and (2) the insured made no effort to cure its default within the ten days before the policy was cancelled.

BankDirect urged this Court to accept its argument that "substantial compliance" with the notice requirement of Section 651.161(b) is sufficient. With no law directly on point in Texas with regard to Section 651.161(b), BankDirect cited authority from other states to the effect that a notice prematurely dated should be treated as effective on the earliest date allowed by statute. But there is also Texas law supporting a substantial compliance approach to a different notice provision in Section 651.161. *INAC Corp. v. Underwriters at Lloyd's*, 56 S.W.3d 242 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (finding that less-than-technical compliance with notice requirement of Section 651.161(d) was legally

1

effective). As a result of this Court's Opinion, there is now conflicting law in Texas as to whether a premium finance company can demonstrate compliance with a notice requirement in Section 651.161 through a showing of substantial compliance.

The Court's rationale for refusing to apply a substantial compliance approach to Section 651.161 is that BankDirect's authority to cancel the policy was derived from the a section of the premium finance agreement entitled "Power of Attorney," and that in Texas, powers of attorney should be strictly construed. Ordinarily, it may be correct to construe a power of attorney strictly because in a general power of attorney situation the person granting the power of attorney is granting another person broad powers in the management of personal decisions and/or business decisions. However, the Court's reliance on general power of attorney law misconstrues the nature of the "Power of Attorney" provision in the premium finance agreement, which exists for the protection of the premium finance company, not the insured. Furthermore, interpreting the statutory notice requirement of Section 651.161(b) through the prism of a power of attorney opens the door for conflicting interpretations of the language of Section 651.161 depending on whether a court focuses on the existence of the "power of attorney" provision. A proper analysis should simply turn on whether substantial compliance with Section 651.161 is sufficient; the Houston court held that

substantial compliance was sufficient in *INAC Corp.*, and this Court should likewise hold that substantial compliance was sufficient in this case.

BankDirect urges the Court to reconsider the "Power of Attorney" section of its Opinion (pp. 5-9) and hold instead that BankDirect did establish as a matter of law that it was within its authority to cancel Plasma Fab's insurance policy.

### FACTUAL SUMMARY

The facts of this case are undisputed. Plasma Fab, a commercial entity engaged in fabricating and erecting structural steel for apartment complexes, entered into a premium finance agreement with BankDirect, a premium finance company. Under the terms of the premium finance agreement, BankDirect loaned Plasma Fab $12,601.18, which Plasma Fab used to fully pay the premiums on three insurance policies. CR 837. In exchange, Plasma Fab agreed to repay the amount borrowed, with interest, in eleven monthly payments to BankDirect. *Id*. As security for the loan, the premium finance agreement granted BankDirect the right, in the event of a default, to collect the unearned premiums from the insurance company and apply the unearned premiums to the loan balance. CR 839 ¶ 4. As a means to enforce BankDirect's collateral rights, the premium finance agreement contained a section entitled "Power of Attorney," in which Plasma Fab irrevocably appointed BankDirect as its attorney-in-fact to effect cancellation of the insurance policies and receive any unearned premiums, in the event that (1) Plasma Fab defaulted on

3

its obligation to BankDirect, and (2) "after proper notice has been mailed as required by law." *Id.* The applicable "law" is Section 651.161(b) of the Texas Premium Finance Act, which states in relevant part:

> Sec. 651.161.  CANCELLATION OF INSURANCE CONTRACT.
>
> (a)  An insurance premium finance company may not cancel an insurance contract listed in a premium finance agreement except as provided by this section for an insured's failure to make a payment at the time and in the amount provided in the agreement.
>
> (b)  The insurance premium finance company must mail to the insured a written notice that the company will cancel the insurance contract because of the insured's default in payment unless the default is cured at or before the time stated in the notice.  The stated time may not be earlier than the 10th day after the date the notice is mailed.
>
> *       *       *

Tex. Ins. Code § 651.161.

Only the "after proper notice has been mailed as required by law" requirement is at issue, because it is undisputed that Plasma Fab defaulted on its obligation.  Plasma Fab itself admitted that "[a]s a result of cash flow problems with the new business, Plasma was often late in making its payments to BankDirect."  CR 766, ¶ 9.  Plasma Fab defaulted on every one of the five payments before the November 2008 payment at issue, and as to the two months prior to November Plasma Fab not only defaulted but failed to cure its default

within the ten days, which resulted in a cancellation of the policies. CR 841-47, 865, 866, 869.[2] At the insurance company's discretion, those cancelled policies were twice reinstated. CR 766, ¶ 9, 767, ¶ 12. But as had been its prior practice, Plasma Fab again defaulted on its sixth payment, the November 2008 payment. CR 860, 869-70, 844. As a result, on November 24, BankDirect generated a Notice of Intent to Cancel, which would inform Plasma Fab that its policies would be cancelled if the default was not cured by December 4, the tenth day after the date of the notice. CR 867. However, BankDirect did not mail the Notice of Intent to Cancel until the next day, November 25 (CR 841, 844), which meant that Plasma Fab received nine days', not ten days', notice of intent to cancel. Plasma Fab did not attempt to cure the default during those nine days, or on the tenth day.

Accordingly, BankDirect then sent a Notice of Cancellation, which had the effect of cancelling Plasma Fab's policies. As found by this Court in its Opinion, the effective date of the cancellation was December 5 (the tenth day) or December 6 (the eleventh day) at the latest. Opinion at 17. Thus, this Court has found that ten or more days elapsed between the date BankDirect mailed the Notice of Intent

---

[2] For the **September 14, 2008** payment due date, BankDirect's Notice of Intent to Cancel was dated September 24, 2008 and contained a cancellation date 10 days later, on October 4, 2008; Plasma Fab did not make payment until day sixteen, on October 10, 2008. CR 865, CR 869 (Account Transaction History #116900). For the **October 14, 2008** payment due date, BankDirect's Notice of Intent to Cancel was dated October 24, 2008 and contained a cancellation date 10 days later, on November 3, 2008; Plasma Fab did not make payment until day seventeen, on November 10, 2008. CR 866; CR 869 (Account Transaction History #116900).

5

to Cancel and the date the policies were cancelled. During that period, Plasma Fab made no attempt to cure the default. On the thirteenth day (December 8) Plasma Fab allegedly caused a fire at an apartment complex. CR 12, ¶ 21. It was only on day fourteen (December 9)—fourteen days after the notice of intent to cancel was mailed and the day after the fire had already occurred—that the November payment was paid by Plasma Fab. CR 870.

BankDirect attempted to have Plasma Fab's policy reinstated by sending a Request for Reinstatement on December 10 (CR 878) but because Plasma Fab's policies had twice previously been reinstated after cancellation, the insurance company refused a third reinstatement. CR 886 (fax refusal, stating "Please note that this was the 3rd reinstatement request on this account & the company only allows 2—Reinstatement is DECLINED.").

After BankDirect obtained a summary judgment on Plasma Fab's claims for breach of contract, breach of fiduciary duty, and negligent misrepresentation, this Court reversed the trial court's order as to BankDirect. Opinion at 8-9. In relevant part, this Court ruled that BankDirect failed to "establish[] as a matter of law that it was within its authority to cancel the policy under the power of attorney" because the Notice of Intent to Cancel was mailed nine days before the cancellation date stated in the Notice. *Id*. at 7. BankDirect urges the Court to reconsider this portion of its Opinion, for reasons set forth below.

6

## ARGUMENT

**I. The Court Erred in Finding that BankDirect Did Not Comply with Section 651.161.**

    **A. The Court's Holding as to BankDirect Is Inconsistent with Its Holding as to Scottsdale.**

In the portion of its Opinion relating to whether the insurance company (Scottsdale) proved that the insurance policy was cancelled with the notice required by the terms of the policy, the Court relied on Texas case law holding that "when less notice is given than is required by the policy, cancellation becomes effective at the earliest date allowed under the contract." Opinion at 17. In arguing that it provided the statutorily-required notice of intent to cancel the policy, BankDirect urged the Court to apply a similar rule—*i.e.*, a rule that the notice of intent to cancel should have become effective on the earliest date allowed under the statute. Brief of Appellee BankDirect at 14-31. While there is no Texas law applying an "effective at the earliest date" rule to a notice of intent to cancel, BankDirect urged the Court to apply supportive law from other jurisdictions,[3] which would have rendered BankDirect's notice effective on the tenth day, thereby complying with Section 651.161.

---

[3] *See Wright v. Rumble*, 476 A.2d 1250, 1253 (N.J. Super. Ct. App. Div. 1984) (holding that premium finance company's attempt to cancel policy "effective immediately" instead of providing statutorily-required three days' advance notice was not void but became effective upon expiration of three-day statutory period); *Maher v. Northland Ins. Co.*, 991 F. Supp. 878, 881-82 (E.D. Mich. 1998) (holding that notice of cancellation that was sent one day early became effective after expiration of ten-day statutory period).

The Court's refusal to apply an "effective at the earliest date" rule to a <u>notice of intent</u> to cancel an insurance policy, while at the same time applying such a rule to a <u>notice of cancellation,</u> is inconsistent and should be reconsidered. The rationale for applying the rule to a notice of cancellation applies equally to a notice of intent to cancel. When a notice of cancellation is prematurely dated but is treated as effective on a later date (at the earliest date allowed under the contract or statute), the insured has been provided the required amount of notice—regardless of the fact that the notice of cancellation provided an earlier, improper date. Accordingly, as explained in one of the insurance cancellation cases relied on by this Court, an argument that a notice of cancellation is ineffective because it was provided before the date allowed by a policy is "technical and without merit" and instead the notice of cancellation "will be intended as operative" on the date permitted by the policy. *California-Western States Life Ins. Co. v. Williams*, 120 S.W.2d 844, 846 (Tex. Civ. App.—El Paso 1938, writ dism'd), cited in Opinion at 17.

The same rationale should apply to a notice of intent to cancel by a premium finance company. Section 651.161(b) requires that the cancellation date stated in a notice of intent to cancel must be a date that is not earlier than the tenth day after the date the notice is mailed. But if less than ten days' notice is provided, and the cancellation date is deemed to be the tenth day (the earliest date allowable under

8

Section 651.161(b)), then the insured will in fact have had ten days to attempt to cure the default, and the purpose of Section 651.161(b) will have been satisfied. If the insured is actually provided ten days between the mailing of the notice of intent and the date the policy is cancelled to cure its defect, then just as in the notice of cancellation cases such as *California-Western*, an argument that the notice is ineffective is "technical" and should be rejected. The notice of intent to cancel should be "intended as operative" on the earliest day permissible (here, on the tenth day as called for by the statute), just as in the notice of cancellation cases such as *California-Western*.

This rationale is particularly applicable here, for two reasons. First, whether Plasma Fab actually had ten days to cure the default before the policy was cancelled is not hypothetical. This Court held (in the Scottsdale portion of the Opinion) that Plasma Fab's policy was cancelled on December 5 or December 6. Opinion at 17 ("cancellation was therefore effective subsequent to receipt on December 5, 2008, or on December 6, 2008, at the latest"). Thus, this Court has already found that Plasma Fab's policy was cancelled ten or more days after BankDirect mailed the Notice of Intent to Cancel on November 25, 2008 — which means that Plasma Fab actually had ten days to cure its default, as contemplated by Section 651.161(b). The purpose of Section 651.161(b), which is to provide the

9

insured 10 days in which to cure its default before cancellation, was satisfied. The Court should therefore find that BankDirect complied with Section 651.161(b).

Second, it is undisputed that Plasma Fab made no effort to cure the default within the ten day statutory notice period. Plasma Fab did not attempt to cure its default at any time during the nine day period specified in the Notice of Intent to Cancel, or even on the tenth day. Nor did it attempt to cure on day eleven or twelve, or even on day thirteen (December 8), when the fire occurred. It was on the fourteenth day (December 9) after BankDirect mailed the Notice of Intent to Cancel to Plasma Fab—which was the day after the fire occurred—that Plasma Fab paid the past due November payment. And this failure to cure the default within the ten-day statutory period was not an isolated occurrence on Plasma Fab's part. Plasma Fab had, in the prior two months, ignored the respective Notices of Intent to Cancel and failed to cure its default within the ten day cancellation period. BankDirect's mistake in mailing the Notice of Intent to Cancel a day late did not make a difference, and the Court should not elevate form over substance under these facts.

**B.    Existing Texas Law Holds That Technical Compliance with Section 651.161 Is Not Required.**

In its Opinion, the Court "observe[d] that BankDirect has cited no authority for applying the substantial compliance approach taken in cases involving notices of cancellation to a statutorily required notice of intent to cancel." Opinion at 7 n.2

10

(emphasis omitted). But, as discussed above, when the purpose of the notice requirement has been met, there is no reason to differentiate between a case involving a notice of cancellation and one involving a notice of intent to cancel. It is true that there are no Texas cases addressing whether substantial compliance with the Section 651.161(b) ten day notice requirement for a notice of intent to cancel is sufficient. But there is Texas authority finding that a premium finance company's substantial compliance with the Section 651.161(d) notice requirement is sufficient. *INAC Corp. v. Underwriters at Lloyd's*, 56 S.W.3d 242 (Tex. App.—Houston [14th Dist.] 2001, no pet.). BankDirect urges this Court to adopt the same reasoning here.

In *INAC Corp.*, the Fourteenth Court squarely addressed whether a premium finance company must strictly comply with a notice requirement of Section 651.161, or whether less than technical compliance is sufficient. INAC, a premium finance company, mailed a notice of cancellation of the policies after the insured defaulted on its payments to the finance company, but the notice failed to comply with all of the requirements of Section 651.161.[4] Specifically, Section 651.161(d) requires the premium finance company to mail the notice of cancellation to the insurer. However, INAC failed to mail the notice of cancellation to the insurer;

---

[4] The statute at issue in *INAC Corp.* was Texas Insurance Code § 24.17(d), the predecessor to current Texas Insurance Code § 651.161(d). In 2003, the statute was codified with no substantive change. Acts of 2003, 78th Leg., R.S., ch. 1274, § 2, eff. April 1, 2005.

11

instead, it mailed the notice to the underwriters in care of the insurance company. 56 S.W.3d at 248. When INAC sued to recover the unearned premiums, the defendants argued that INAC failed to comply with the unambiguous language of Section 651.161(d) and therefore INAC's notice was not legally effective. *Id.* at 247-48.

Although the premium finance agreement in *INAC Corp.* also contained a power of attorney authorizing the finance company to cancel the financed policies in the event of default (*id.* at 245-46), the court did not focus on the existence of, or language of, the power of attorney. Instead, the court analyzed whether the premium finance company complied with Section 651.161 even though the requirements of the statute were not technically met. To answer this question, the court relied on case law from other jurisdictions, "agree[ing] with the interpretation that other states have given to similarly-worded-premium-finance statutes." *Id.* at 249. The court further found that in determining the meaning of Section 651.161, it had to consider the entire statute, its nature and object, and the consequences that would follow from each construction, and "must avoid an interpretation that would produce absurd results." *Id.* Applying these principles to the "issue of first impression under Texas law," the court held that although Section 651.161(d) requires that the premium finance company mail the notice of cancellation to "the insurer," INAC's actions in mailing the notice of cancellation to the underwriters

in care of the insurance company were sufficient to satisfy the Section 651.161(d) notice requirement. *Id.*

Applied here, those principles also weigh in favor of employing a substantial compliance approach to the notice requirement in Section 651.161(b), just as the Fourteenth Court of Appeals did with regard to Section 651.161(d). When the object of Section 651.161(b) is considered—*i.e.*, to give the insured 10 days in which to cure its default to avoid cancellation of its insurance policy—that object was satisfied. Plasma Fab was actually provided ten days between the date of the mailing of the Notice of Intent to Cancel (November 25) and the cancellation date itself (December 5 or December 6, Opinion at 17) during which it could have cured its default (but did not). To interpret the statute in a manner that prohibits a substantial compliance approach when the purpose of the statute was met would run the risk, in the words of the Fourteenth Court, of producing "absurd" results. Because the undisputed facts show that the insured in fact was provided the required ten days to attempt to cure its defect but failed to do so, this Court should find that BankDirect's substantial compliance satisfied Section 651.161(b).

## II. The Court Erred in Relying on General Power of Attorney Law Regarding "Strict Construction" of Powers of Attorney.

The "Power of Attorney" section of the premium finance agreement irrevocably appointed BankDirect as Plasma Fab's attorney-in-fact to effect cancellation of the insurance policies upon (1) Plasma Fab's default, and (2) "after

13

proper notice has been mailed as required by law." CR 839, ¶ 4. Because BankDirect derived its authority to cancel the insurance policies from this "Power of Attorney" section contained in the premium finance agreement, this Court relied on general Texas law concerning powers of attorney to hold that BankDirect failed to prove it had authority to cancel Plasma Fab's insurance policies. The Court erred in relying on general power of attorney case law to find against BankDirect.

First, the existence of the power of attorney does not warrant a ruling against BankDirect. The power of attorney provision requires mailing of proper notice "as required by law." As shown above, a premium finance company can satisfy Section 651.161 (the "law") by substantially complying with the statute. Because BankDirect substantially complied with Section 651.161(b), it provided "proper notice" to Plasma Fab as "required by law" and therefore had authority under the power of attorney to effect cancellation of the policy.

This Court erred in reaching a different result by applying a rule of strict construction to the power of attorney. The Court relies on six cases for the proposition that in Texas, courts are to construe powers of attorney strictly so as to exclude the exercise of power not clearly given. Opinion at 7-8. In essence, each of these cases applies the rule stated by the Texas Supreme Court in *Gouldy v. Metcalf*:

> When an authority is conferred upon an agent by a formal instrument, as by a power of attorney, there are two rules of

14

construction to be carefully attended to: (1) the meaning of general words in the instrument will be restricted by the context, and construed accordingly. (2) The authority will be construed strictly, so as to exclude the exercise of any power which is not warranted either by the actual terms used, or as a necessary means of executing the authority with effect.

12 S.W. 830, 831 (Tex. 1889).

None of the six cases involved a power of attorney provision in a lender-borrower premium finance agreement. In *Gouldy*, the power of attorney granted, among other powers, the power to buy, sell, or exchange property, to receive and receipt for money, to sell and dispose of property, to give bills of sale thereto, or to sell and transfer real estate and execute deeds thereto. *Id*. *Natho v. State of Texas*, No. 3-11-00498-CR, 2014 WL 538787, at *1 (Tex. App.—Austin Feb. 6, 2014, pet. ref'd), involved a statutory durable power of attorney signed by an elderly person giving a family member general authority to act on her behalf. *First National Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 145 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.), involved a general power of attorney that granted broad powers with respect to mineral interests owned by the principal. *AVCO Corp. v. Interstate Southwest Ltd.,* 251 S.W.3d 632, 639 (Tex. App.—Houston [14th] 2008, pet. denied), involved a power of attorney granted as part of an assignment of claims agreement, which authorized prosecution of certain claims. In *Gittings, Neiman-Marcus, Inc. v. Estes*, 440 S.W. 2d 90, 93 (Tex. Civ. App.—Eastland 1969, no writ), the instrument "grant[ed] broad powers" to take

15

possession of property and handle it to obtain the largest return consistent with good business practices. Finally, *Tetens v. Garcia*, No. 03-96-00147-CV, 1996 WL 656443, at *1 (Tex. App.—Austin Nov. 13, 1996, no writ), involved a general power of attorney authorizing signature/endorsement of the principal's checks, withdrawal of funds, and the power to make gifts of the principal's property.

The cited cases do not support the result reached by the Court. This case does not represent a traditional power of attorney scenario. A premium finance company is in the business of extending credit to those choosing to finance their insurance policies. *Cochran v. Paco, Inc.*, 606 F.2d 460, 466 (5th Cir. 1979). In a premium finance agreement, the insured grants the premium finance company a security interest in the refund of unearned premiums, and a mechanism (via a power of attorney/appointment as attorney-in-fact) to collect the unearned premiums directly from the insurer upon cancellation of the policy. *Service Fin. v. Adriatic Ins. Co.*, 46 S.W.3d 436 (Tex. App.—Waco 2001) (explaining premium finance agreement), *judgm't vacated,* 51 S.W.3d 450 (Tex. App.—Waco 2001) (vacating judgment pursuant to settlement but refusing to withdraw opinion). "A security interest in unearned premiums would be worthless without the means to recover premiums, which can only be recovered upon cancellation of the policy." *In re Maplewood Poultry Co.*, 2 B.R. 550, 553 (Bankr. D. Me. 1980).

Thus, the function of the power of attorney in a premium finance agreement is to "afford [the premium finance company] a contractual remedy with which to enforce its rights in its collateral in the event of default" by the insured. *Id.* at 552-53. "The very reason the premium finance company executes a power of attorney is to <u>protect itself</u> should the insured default in its payments." *Massachusetts Bay Ins. Co. v. Photographic Assistance Corp.*, 732 F. Supp. 1572, 1577 (N.D. Ga. 1990) (emphasis added). Moreover, a power of attorney granted to a premium finance company pursuant to a premium finance agreement "does not render it a fiduciary" to the insured; rather, the premium finance company simply "stands in the shoes of the insured when cancelling an insurance policy." *Gill Plumbing Co. v. Imperial Premium Fin. Co.*, 445 S.E.2d 840, 843 (Ga. Ct. App. 1994); *Massachusetts Bay*, 732 F. Supp. at 1575.

The *Gouldy* standard of strict compliance should not apply to a power of attorney in a premium finance agreement. But even if it does, the discussion above provides the context in which such a power of attorney appears in a premium finance agreement. And according to *Gouldy*, that is the context in which the power of attorney language must be construed — *i.e.*, a context in which the power of attorney exists for the protection of BankDirect (the premium finance company) not Plasma Fab (the insured). *Gouldy*, 12 S.W. at 831. In this context, there is no reason to apply a rule of strict construction of a power of attorney against a

17

premium finance company. Rather, this Court should determine, independent of any law regarding strict construction of powers of attorney, whether BankDirect complied with Section 651.161(b); if it did, then it had authority to effect cancellation of Plasma Fab's insurance policy. For the reasons discussed above in Section I, this Court should hold that BankDirect complied with Section 651.161(b) in mailing its Notice of Intent to Cancel, and that it therefore had authority to cancel Plasma Fab's policies at issue.

## CONCLUSION AND PRAYER

For the foregoing reasons,[5] Appellee BankDirect requests that the Court grant rehearing, vacate the Court's Opinion and Judgment dated May 8, 2015, affirm the trial court's judgment granting BankDirect's motion for summary judgment, and grant any other relief to which BankDirect is entitled.

Respectfully submitted,

*/s/ Sandra G. Rodriguez*
D. Ferguson McNiel
State Bar No. 13830300
Sandra G. Rodriguez
State Bar No. 00790752
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002
(713) 758-3882

---

[5] BankDirect also continues to urge all arguments set forth in its Brief of Appellee.

18

(713) 615-5493 (facsimile)
fmcniel@velaw.com
srodriguez@velaw.com

Amy Tankersley
State Bar No. 24068623
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
(214) 220-7817
(214) 999-7817 (facsimile)
atankersley@velaw.com

David B. H. Williams
*Admitted Pro Hac Vice*
David J. Strubbe
*Admitted Pro Hac Vice*
WILLIAMS BAX & SALTZMAN, P.C.
221 N. LaSalle Street, 37th Floor
Chicago, Illinois 60601
(312) 372-3311
(312) 372-5720 (facsimile)
williams@wbs-law.com
strubbe@wbs-law.com

***Attorneys for Appellee***
***BankDirect Capital Finance, LLC***

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing document contains 4,483 words, excluding the portions excluded by Texas Rule of Appellate Procedure 9.4(i)(1). It was prepared in Microsoft Word using 14-point typeface for body text and 12-point typeface for footnotes. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

/s/ Sandra G. Rodriguez
Sandra G. Rodriguez

19

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of May, 2015, a true and correct copy of the foregoing document was served electronically upon counsel of record as follows:

John C. Hart
Bruce H. Rogers
BROWN, DEAN, WISEMAN, PROCTOR,
  HART & HOWELL LLP
306 W. 7th Street, Suite 200
Fort Worth, Texas 76102
(817) 332-1391 (telephone)
(817) 870-2427 (fax)

**Attorneys for Appellants**

Ruben Valadez
Otto "Skip" Good
LANGLEY & BANACK, INC.
745 East Mulberry
Suite 900
San Antonio, Texas 78212
(210) 736-6600 (telephone)
(210) 735-6889 (fax)

**Attorneys for Appellants**

J. Hampton Skelton
SKELTON & WOODY
248 Addie Roy, Building B, Suite 302
Austin, Texas 78746
(512) 651-7000 (telephone)
(512) 651-7001 (fax)

**Attorney for Appellants**

Gregory R. Ave
WALTERS, BALIDO & CRAIN, L.L.P.
900 Jackson Street, Suite 600
Dallas, Texas 75202
(214) 347-8380 (telephone)
(214) 347-8381 (fax)

**Attorneys for Appellee Scottsdale Insurance Company**

/s/ Sandra G. Rodriguez
Sandra G. Rodriguez

20

US 3518813v.1

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00331-CV

**Plasma Fab, LLC and Russell McCann, Appellants**

**v.**

**BankDirect Capital Finance, LLC, a Subsidiary of Texas Capital Bank, N.A.; and Scottsdale Insurance Company, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-12-001816, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

## O P I N I O N

Plasma Fab, LLC and Russell McCann, sole owner of Plasma Fab, (jointly Plasma Fab) appeal the trial court's order granting the motions for summary judgment of BankDirect Capital Finance, LLC, a Subsidiary of Texas Capital Bank, N.A., and Scottsdale Insurance Company. The central issue in BankDirect's and Scottsdale's motions for summary judgment, and on appeal, is whether a general liability insurance policy Plasma Fab purchased from Scottsdale and financed through premium finance company BankDirect was in effect at the time of Plasma Fab's loss. For the reasons that follow, we affirm the trial court's order in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Plasma Fab, an ornamental iron construction contractor, purchased a general liability policy from Scottsdale in May 2008 and financed payment through premium finance company

BankDirect. BankDirect paid all premiums in advance, and Plasma Fab was to make monthly payments to BankDirect. The premium finance agreement gave BankDirect a limited power of attorney and authority to cancel the policy on behalf of Plasma Fab and seek a refund of unearned premiums for nonpayment of premium "after proper notice has been mailed as required by law." Plasma Fab was chronically late making payments, and twice the policy was cancelled and reinstated. It is the third cancellation that is at issue.

On November 24, 2008, BankDirect prepared a notice of intent to cancel the policy effective December 4, 2008, which was ten days following the date the notice was prepared. However, BankDirect did not mail the notice of intent to cancel to Plasma Fab until the next day, November 25, 2008, so that the stated date of cancellation was only nine days after the date the notice was mailed. On December 4, 2008, after 5:00 p.m., BankDirect mailed a notice of cancellation to Scottsdale effective December 4, 2008.

In February 2009, Plasma Fab was sued for causing a fire on December 8, 2008, that destroyed the La Frontera apartment complex in Round Rock, Texas. Scottsdale denied coverage on the ground that the policy had been cancelled prior to the fire. After a judgment was rendered against Plasma Fab for approximately $6 million, Plasma Fab filed suit against Scottsdale for breach of contract and violations of the Insurance Code for which remedy is allowed under the Deceptive Trade Practices Act (DTPA). *See* Tex. Ins. Code §§ 541.060(a)(1), (a)(2)(A), (a)(3); Tex. Bus. & Com. Code § 17.50(4). Plasma Fab also sued BankDirect for breach of contract, breach of fiduciary duty, deceptive trade practices, and negligent misrepresentation. Scottsdale and

2

BankDirect filed motions for summary judgment on all claims, which the trial court granted. This appeal followed.[1]

## DISCUSSION

In five issues, Plasma Fab challenges the trial court's summary judgment on the ground that the policy had not been effectively cancelled at the time of the fire. We review a trial court's decision to grant summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When the trial court does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Knott*, 128 S.W.3d at 216.

**Waiver**

We begin with Plasma Fab's fifth issue, in which it addresses BankDirect's contention in its motion for summary judgment that Plasma Fab waived its right to complain of cancellation of the policy by cashing BankDirect's check for the return of unearned premiums. Waiver is an affirmative defense that must be pleaded and proven by the party asserting it. *See* Tex. R. Civ. P. 94; *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 344

---

[1] Plasma Fab also filed motions for partial summary judgment against Scottsdale and BankDirect, which the trial court denied, but Plasma Fab does not appeal the denial of its motions.

(Tex. 2011). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Although waiver is usually a question of fact, where, as here, the relevant facts are clearly established and undisputed, it becomes a question of law. *Jernigan v. Langley*, 111 S.W.3d 153, 156–57 (Tex. 2003) (per curiam).

The record shows that BankDirect issued check number 92444 dated May 8, 2009, in the amount of $205.82. Although the check was made payable to Plasma Fab, LLC, it was endorsed for deposit by William Gammon Insurance, Plasma Fab's insurance agent. There is no evidence in the summary judgment record indicating when, how, or even whether the refund was subsequently transferred to and accepted or cashed by Plasma Fab. Nor is there any evidence showing that Plasma Fab was aware of its right to complain of the cancellation and intentionally relinquished or knowingly acted inconsistently with that right. On this record, we cannot conclude that BankDirect met its summary judgment burden of establishing as a matter of law its affirmative defense that Plasma Fab waived its complaint concerning cancellation of the policy. *See* Tex. R. Civ. P. 94; *Kirk v. Kemper Investors Life Ins. Co.*, 448 F. Supp. 2d 828, 838–39 (S.D. Tex. 2006) (explaining that insurer had not shown waiver where testimony of insured's life insurance beneficiary did not indicate he knew he had right to bring claim or that by accepting check he was giving up that claim, and where there was no evidence he consulted attorney); *Italian Cowboy Partners*, 341 S.W.3d at 344; *Knott*, 128 S.W.3d at 215–16; *cf. Cates v. Continental Cas. Co.*, 366 S.W.2d 126, 127–28 (Tex. Civ. App.—Dallas 1963, no writ) (where insured endorsed and

4

cashed refund check with statement on back that it was in full refund of all premiums and policy was surrendered as null and void from date of issue, parties entered new binding contract and insured could not sue insurer under policy). We sustain Plasma Fab's fifth issue.

**Plasma Fab's Claims Against BankDirect**

*Power of Attorney*

In its second issue, Plasma Fab challenges the summary judgment as to BankDirect on the ground that the cancellation was ineffective because BankDirect failed to comply with statutory requirements and therefore lacked authority to cancel under the terms of the power of attorney. Although Plasma Fab couches its argument in terms of BankDirect's "lack[ing] authority" and "ha[ving] no power," its assertions amount to an argument that BankDirect exceeded the authority given it under the limited power of attorney. The premium finance agreement provided as follows:

> 4. Power of Attorney. Insured hereby irrevocably appoints BankDirect as its Attorney-in-Fact upon the occurrence of an Event of Default (defined below) and, after proper notice has been mailed as required by law, grants to BankDirect authority to effect cancellation of the Policies, and to receive any unearned premium or other amounts with respect to the Policies assigned as security herein, and to sign any check or draft issued thereto in Insured's name and to direct the insurance companies to make said check or draft payable to BankDirect. . . .

By its plain language, the agreement afforded BankDirect authority to cancel the policy only upon the occurrence of two conditions—default by Plasma Fab and the mailing by BankDirect of proper notice as required by law. It is undisputed that Plasma Fab failed to timely pay its premium and defaulted, thus triggering the first condition of the power of attorney. Plasma Fab argues that

5

BankDirect also failed to meet the second condition by failing to comply with the notice requirements of the Premium Finance Act. *See* Tex. Ins. Code §§ 651.001–.209 (the Act). Section 651.161(b) of the Act provides that to cancel for nonpayment of premium, a premium finance company must mail to the insured a written notice that the company will cancel by a stated date unless the default is cured, and the stated date "may not be earlier than the 10th day after the date the notice is mailed." *See id.* § 651.161(b). It is clear from the record that BankDirect mailed a notice of intent to cancel with an effective date only nine days after the date of the mailing.

BankDirect does not dispute that it failed to strictly comply with section 651.161(b) and instead focuses on the effectiveness of the cancellation in light of its failure to comply. BankDirect cites Texas and federal cases involving cancellations by insurance companies under policy terms and cases from other state jurisdictions involving cancellations by premium finance companies. The courts in these cases generally hold that notices of cancellation that do not comport with policy terms or the applicable premium finance statute are not void but become effective on the earliest date allowed by the policy or statute. *See, e.g.*, *SGF Global, Inc. v. Hartford Cas. Ins. Co.*, Civ. Action No. H-04-4534, 2007 U.S. Dist. LEXIS 8309, at *11 (S.D. Tex. Feb. 27, 2007); *Wright v. Rumble*, 476 A.2d 1250, 1253 (N.J. Super. Ct. App. Div. 1984). BankDirect urges us to apply this "substantial compliance" approach to the facts of this case.

However, BankDirect does not directly address its authority under the power of attorney. It has cited no authority, and we have found none, applying a substantial compliance standard in determining whether actions taken under a power of attorney fall within the authority

6

granted by the power of attorney.[2]  To the contrary, it is well established that courts are to construe powers of attorney strictly so as to exclude the exercise of power not clearly given.  *See Gouldy v. Metcalf*, 12 S.W. 830, 831 (Tex. 1889) (authority conferred by power of attorney strictly construed to exclude exercise of any power not warranted by actual terms used or "as a necessary means of executing the authority with effect"); *Natho v. State*, No. 03-11-00498-CR, 2014 Tex. App. LEXIS 1427, at *8 (Tex. App.—Austin Feb. 6, 2014, pet. ref'd) (not designated for publication) (citing *Gouldy*, 12 S.W. at 831).  "The nature and extent of the authority granted must be ascertained from the instrument granting the power of attorney and such instrument is to be strictly construed to limit the authority of the attorney in fact."  *First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 145 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.).

Here, the grant of authority under the power of attorney was not broad; instead, the language unambiguously limited BankDirect's authority to cancel the policy to circumstances in which two conditions were met.  It is undisputed that BankDirect failed to meet the second condition by mailing the notice of intent to cancel only nine days before the cancellation date stated in the notice.  In light of the long-standing rule of construction that we construe powers of attorney strictly so as to limit the authority of the attorney in fact, *see Gouldy*, 12 S.W. at 831; *Kinabrew*, 589 S.W.2d at 145, and in the absence of any authority for applying a more lenient standard, we cannot conclude that BankDirect established as a matter of law that it was within its authority to cancel the policy under the power of attorney.  *See AVCO Corp. v. Interstate SW, Ltd.*, 251 S.W.3d 632, 664 (Tex.

---

[2]  We also observe that BankDirect has cited no authority for applying the substantial compliance approach taken in cases involving notices of *cancellation* to a statutorily required notice of *intent to cancel*.

7

App.—Houston [14th Dist.] 2007, pet. denied) (where power of attorney granted authority to prosecute certain claims as of 1996, authority did not extend to tort claims arising subsequently); *Hardy v. Robinson*, 170 S.W.3d 777, 781 (Tex. App.—Waco 2005, no pet.) (strictly construed, power of attorney authorized attorney in fact to pursue specific lawsuit and create trust from proceeds but did not itself create trust); *Gittings, Neiman-Marcus, Inc. v. Estes*, 440 S.W.2d 90, 92–93 (Tex. Civ. App.—Eastland 1969, no writ) (power of attorney authorizing attorney in fact to "take possession of property" and "handle it [to] obtain the largest return consistent with good business practices" did not authorize attorney in fact to bind principal as guarantor of debt of another); *Tetens v. Garcia*, No. 03-96-00147-CV, 1996 Tex. App. LEXIS 5019, at *7–8 (Tex. App.—Austin Nov. 13, 1996, no writ) (not designated for publication) (where power of attorney conferred broad powers to manage properties and to "do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises," as well as numerous specific powers, attorney in fact exceeded authority by altering funds in a manner that removed trust beneficiary).

We therefore conclude that BankDirect failed to meet its burden of showing that it was entitled to summary judgment as a matter of law as to BankDirect's claims for breach of contract and breach of fiduciary duty. *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16; *Plummer v. Estate of Plummer*, 51 S.W.3d 840, 842 (Tex. App.—Texarkana 2001, pet. denied) (power of attorney creates agency relationship, and agent owes fiduciary duty to principal with respect to matters within scope of agency); *Tetens*, 1996 Tex. App. LEXIS 5019, at *10 (appointment of attorney in fact creates fiduciary relationship and attorney in fact who exceeded authority under

8

power of attorney breached fiduciary duty to principal). We sustain Plasma Fab's second issue as to BankDirect's exceeding its authority under the power of attorney. For reasons discussed below, however, we do not conclude that cancellation was ineffective, and we overrule Plasma Fab's second issue as to that argument.

### *Limitation of Liability*

We turn next to Plasma Fab's third issue, in which it addresses BankDirect's alternative argument in its motion for summary judgment that even if BankDirect acted improperly in exercising its right under the power of attorney to cancel the policy, BankDirect is not liable for Plasma Fab's loss under the terms of the limitation of liability provision in the premium finance agreement. The agreement included the following provision:

> 16. Liability. Neither BANKDIRECT nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by BANKDIRECT or its assignee of the rights conferred herein, including, but not limited to BANKDIRECT's exercise of the right of cancellation, except in the event of willful or intentional misconduct by BANKDIRECT.

Plasma Fab contends that this provision did not provide fair notice of BankDirect's intent to exculpate itself from liability for future occurrences and was therefore unenforceable.

As a pre-injury release of BankDirect's liability for losses, the limitation of liability provision is a risk-shifting contractual agreement, and to be enforceable, it must satisfy the fair notice doctrine. *See Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 332 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507–09 (Tex. 1993)

9

(holding fair notice requirements apply to releases and other exculpatory agreements)).  The fair

notice requirements include the conspicuousness requirement and the express negligence doctrine.

*Dresser*, 853 S.W.2d at 508; *Sydlik*, 195 S.W.3d at 332.  An agreement that fails to satisfy either of

the two requirements is unenforceable as a matter of law.  *Storage & Processors, Inc. v. Reyes*,

134 S.W.3d 190, 192 (Tex. 2004).  Whether a provision complies with the fair notice requirements

is a question of law for the court.  *Littlefield v. Schaefer*, 955 S.W.2d 272, 275 (Tex. 1997); *Dresser*,

853 S.W.2d at 509.

  The dispositive issue, then, is whether BankDirect established as a matter of law that

the limitation of liability provision is conspicuous.  The supreme court has adopted the Uniform

Commercial Code (UCC) definition of conspicuousness for risk-shifting agreements such as this that

relieve a party of responsibility in advance.  *See Dresser*, 853 S.W.2d at 511 (adopting prior version

of definition).  The current UCC definition provides:

> (10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> > (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

10

Tex. Bus. & Com. Code § 1.201(10). Under this definition, a provision is conspicuous when a reasonable person ought to have noticed it. *Id.*; *Dresser*, 853 S.W.2d at 511. Stated differently, "'something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'" *Reyes*, 134 S.W.3d at 192 (quoting *Dresser*, 853 S.W.2d at 508) (brackets in original); *Sydlik*, 195 S.W.3d at 332. Language may satisfy the conspicuousness requirement by appearing in capital headings, contrasting type, font, or color, or an extremely short document, or by otherwise calling attention to itself. *See* Tex. Bus. & Com. Code § 1.201(10); *Reyes*, 134 S.W.3d at 192; *Dresser*, 853 S.W.2d at 511.

Applying these standards to the provision at issue, we conclude that BankDirect did not meet its burden of establishing as a matter of law that the limitation of liability in the premium finance agreement is conspicuous. *See Reyes*, 134 S.W.3d at 192; *Dresser*, 853 S.W.2d at 511. The summary judgment evidence shows that it is located in paragraph 16, in the second column of a page that appears to be the third page of the agreement, and is in the same small print and font as the remainder of the agreement. There are no bold or capital letters, other than the name "BANKDIRECT," no symbols or other marks to call attention to it, and its heading is "Liability," not "Limitation of Liability." Therefore, BankDirect has not shown as a matter of law that the provision complies with the fair notice requirement of conspicuousness. *See Reyes*, 134 S.W.3d at 192; *Knott*, 128 S.W.3d at 215–16; *Dresser*, 853 S.W.2d at 511 (provision not conspicuous where it appeared on back of work order in series of numbered paragraphs without headings or contrasting type and document not short enough so that every term considered conspicuous); *compare Sydlik*, 195 S.W.3d at 332 (release conspicuous where document was only one page with three paragraphs

11

and statement in large, bold, underlined letters at top that it was release and where releasing party initialed each paragraph). Because we conclude that Bank Direct has not met its burden on conspicuousness, we need not reach Plasma Fab's argument that BankDirect failed to show that the limitation of liability provision does not meet the express negligence doctrine. *See Reyes*, 134 S.W.3d at 192; *Dresser*, 853 S.W.2d at 510. We sustain Plasma Fab's third issue.[3]

**Plasma Fab's Claims against Scottsdale**

### *Scottsdale's Liability for BankDirect's Actions*

As part of its second issue, Plasma Fab argues that the trial court erred in granting summary judgment in favor of Scottsdale because Scottsdale failed to establish as a matter of law that the cancellation was effective. Plasma Fab contends that Scottsdale's failure to verify that BankDirect complied with statutory cancellation procedures rendered the cancellation ineffective. Although no Texas cases have resolved this issue, a number of cases from other jurisdictions involving similar fact patterns and statutory schemes have addressed it. A leading case supporting Plasma Fab's position, and the primary case on which Plasma Fab relies, is *Insurance Co. of N. Am. v. Cooke*, 624 So. 2d 252 (Fla. 1993). In *Cooke*, the Florida Supreme Court, when faced with a certified question from the district court involving statutory language similar to section 651.161(b), held that where an insured denies receipt of the notice of intent to cancel, an insurer who raises the defense of cancellation must prove the premium finance company complied with the statutory

---

[3] Having concluded that BankDirect failed to meet its summary judgment burden of establishing that the provision is enforceable, we do not reach Plasma Fab's fourth issue, in which it argues in the alternative that even if the provision is valid, it does not relieve BankDirect of liability because BankDirect engaged in willful or intentional misconduct.

12

provisions in order to avoid liability under an insurance policy. *See id.* at 255; *see also Kende Leasing Corp. v. A.I. Credit Corp.*, 524 A.2d 1306, 1308, 1311–13 (N.J. Super. Ct. App. Div. 1987) (where insured denied receipt of notice of intent to cancel, court reasoned that if insurer could effectively cancel despite failure of premium finance company to send notice of intent to cancel, notice requirement would be meaningless and remedy against premium finance company would be less effective because purpose of notice was to prevent cancellation, and held cancellation ineffective and insurer liable on policy as if cancellation had not occurred); *see also Felican v. State Farm Mut. Ins. Co.*, 449 N.Y.S.2d 887, 892 (Sup. Ct. N.Y. App. Term 1982) (where there was insufficient proof premium finance company mailed notice of cancellation, insurer did not meet burden to prove policy had been cancelled and was required to afford coverage).

The opposing view is represented by *Carr v. Peerless Ins. Co.*, 724 A.2d 454 (Vt. 1998). In *Carr*, the court reasoned that there was nothing in the statutory scheme making the insurer responsible for the improper action of the premium finance company, the insurer was not a party to the premium finance agreement, and there was no supervisory or monitoring relationship between the insurer and the premium finance company. *See id.* at 458. The court concluded that "any wrong here was committed by the premium finance company, and it is therefore the party to whom the insured should turn for recovery." *See id.* at 459; *see also Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465, 1468–70 (7th Cir. 1994) (reasoning that to construe premium finance act "as reaching beyond premium finance companies to protect insureds by giving them recourse against insurers as well, would torture the Act's ordinary meaning" and holding that language prohibiting cancellation without compliance with notice requirements applied to premium finance company but

13

not insurer); *Illinois Ins. Guar. Fund v. Evanston Paper & Paper Shredding Co.*, 649 N.E.2d 568, 569 (Ill. App. Ct. 1995) (holding that if insured grants premium finance company power to cancel, insurer may cancel at premium finance company's behest and that if premium finance company violates its statutory duties, insured must seek reparation from premium finance company and not insurer, who has no continuing duty to insure under cancelled contract).

We are more persuaded by the reasoning of the courts in *Carr*, *Jabin*, and *Evanston Paper*. We must construe the Premium Finance Act as a whole according to its plain language and ordinary meaning. *See Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013); *Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). The Act regulates premium finance companies and agreements. *See* Tex. Ins. Code §§ 651.001–.209. The plain language of section 651.161, which provides that *a premium finance company* may not cancel a policy except as provided by that section, comports with the Act's function of regulating premium finance companies, not insurers. *See id.* § 651.161(a); *see also Jabin*, 16 F.3d at 1468. Nothing in the statutory scheme either imposes the requirements of section 651.161 on the insurer or suggests that the insurer is responsible for the failure of the premium finance company to comply, and to construe it so as to impose such responsibility on the insurer would "torture" the statute's ordinary meaning. *See Jabin*, 16 F.3d at 1468; *Zanchi*, 408 S.W.3d at 376; *Carr*, 724 A.2d at 458. We cannot read the phrase "[a]n insurance premium finance company may not cancel an insurance contract" to mean "an insurance premium finance company or an insurer may not cancel an insurance contract." *See Zanchi*, 408 S.W.3d at 376; *Texas Citizens*, 336 S.W.3d at 624; *Evanston*, 649 N.E.2d at 570–71 (citing *Haft v. Charter Oak Fire Ins.*, 635 N.E.2d 843, 938 (Ill. App. Ct. 1994)) (if

legislature had intended violation of notice provision to block cancellation of policy it could have so stated).[4]

Further, Scottsdale is not a party to the premium finance agreement and has no supervisory or monitoring role as to BankDirect. *See Carr*, 724 A.2d at 458. Moreover, we agree with the court in *Carr* that an insured's remedy against a premium finance company is no less effective than a remedy against the insurer in discouraging improper cancellations by the premium finance company in the future. *See id.* at 459. We therefore conclude that Scottsdale met its summary judgement burden of establishing that under the plain language and ordinary meaning of section 651.161, it had no obligation to verify BankDirect's compliance with the statutory notice provisions and that cancellation was effective regardless of BankDirect's failure to comply with the statutory notice requirements. *See Jabin*, 16 F.3d at 1468, 1470; *Zanchi*, 408 S.W.3d at 376; *Texas Citizens*, 336 S.W.3d at 624; *Knott*, 128 S.W.3d at 215–16; *Carr*, 724 A.2d at 458–59; *see also Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981) (agent acting within scope

---

[4] The language of section 651.161 also serves to distinguish *Insurance Co. of N. Am. v. Cooke*, 624 So. 2d 252 (Fla. 1993) and *Felican v. State Farm Mut. Ins. Co.*, 449 N.Y.S.2d 887 (Sup. Ct. N.Y. App. Term 1982). The applicable statutes construed in those cases provided broadly that "the insurance contract shall not be cancelled" unless such cancellation is effectuated in accordance with the statutory notice provisions. *See Cooke*, 624 So. 2d at 255 n.2; *Felican*, 449 N.Y.S.2d at 890. In contrast, the language of section 651.161 specifically prohibits cancellation only by "the insurance premium finance company." *See* Tex. Ins. Code § 651.161(a). In addition, we observe that after the Florida Supreme Court's holding in *Cooke*, the Florida Legislature amended the premium finance statute to provide that upon receipt of the cancellation notice by the insurer, "the insurance contract shall be cancelled with the same force and effect as if the notice of cancellation had been submitted by the insured himself, *whether or not the premium finance company has complied with the notice requirement of this subsection* . . . ." *See Bamboo Garden of Orlando, Inc. v. Oak Brook Prop. & Cas. Co.*, 773 So. 2d 81, 83–84 (Fla. Dist. Ct. App. 2000) (discussing legislative changes and concluding it was legislature's intent not to burden insurer with responsibility of ensuring finance company complies with notice provisions).

15

of apparent authority binds principal as though principal had performed action). We overrule Plasma Fab's second issue as to Scottsdale's obligation to verify BankDirect's compliance with statutory notice requirements.

### *Advance Written Notice*

In its first issue, Plasma Fab argues that Scottsdale was not entitled to summary judgment because it failed to establish cancellation as a matter of law. In particular, Plasma Fab argues that there was no "advance written notice" of cancellation. The policy provided that the insured may cancel the policy "by mailing or delivering to [Scottsdale] advance written notice of cancellation." Plasma Fab contends that because BankDirect did not mail the notice of cancellation until after 5:00 p.m. on December 4, 2008, Scottsdale could not have received it until December 5 at the earliest, making cancellation effective December 4 retroactive. Consequently, Plasma Fab argues, the notice was not "advance." It is Plasma Fab's contention that Scottsdale, which had the burden to prove its affirmative defense of cancellation, had to establish that this provision of the policy had been met. Although cancellation is an affirmative defense on which Scottsdale had the burden of proof, *see* Tex. R. Civ. P. 94; *Anchor Cas. Co. v. Crisp*, 346 S.W.2d 364, 367 (Tex. Civ. App.—Amarillo 1961, no writ) (insurer had burden to establish defense of cancellation); *Republic W. Ins. Co. v. Rockmore*, No. 3-02-CV-1569-K, 2005 U.S. Dist. LEXIS 327, at *21 (N.D. Tex. Jan. 10, 2005) ("Under Texas law, cancellation is an affirmative defense which must be proved by the insurer at trial."), we do not find this argument persuasive.

First, is was Plasma Fab who cancelled the policy, through its agent, acting with apparent authority under the power of attorney, *see Biggs*, 611 S.W.2d at 629, and Scottsdale merely

16

complied with the terms of the policy in cancelling as of the date specified by Plasma Fab through BankDirect. Further, the policy also provided that the notice of cancellation "will state the effective date of cancellation" and "[t]he policy period will end on that date." Texas courts have long held that, in circumstances other than retroactive cancellation after a loss has occurred, when less notice is given than is required by the policy, cancellation becomes effective at the earliest date allowed under the contract. *See, e.g.*, *Brewer v. Maryland Cas. Co.*, 245 S.W.2d 532, 534 (Tex. Civ. App.—San Antonio 1952, writ ref'd n.r.e.) (notice of cancellation effective at earlier date than permitted by policy controlled by the policy); *Frontier-Pontiac, Inc. v. Dubuque Fire & Marine Ins. Co.*, 166 S.W.2d 746, 747 (Tex. Civ. App.—Fort Worth 1942, no writ) (notice of cancellation effective immediately or within less time that provided in policy sufficient to cancel policy at end of time set out in policy); *California-Western States Life Ins. Co. v. Williams*, 120 S.W.2d 844, 846 (Tex. Civ. App.—El Paso 1938, writ dism'd) (explaining that notice that the policy "is hereby cancelled" would take effect five days after receipt of notice, as provided by policy).

Here, the record reflects that Plasma Fab, through BankDirect, gave notice of cancellation to Scottsdale, with the stated effective date of December 4, 2008, and that Plasma Fab received the notice on December 5, 2008. Under the terms of the policy requiring advance written notice, cancellation was therefore effective subsequent to receipt on December 5, 2008, or on December 6, 2008, at the latest. *See Brewer*, 245 S.W.2d at 534; *Frontier-Pontiac*, 166 S.W.2d at 747; *Williams*, 120 S.W.2d at 846. Either way, advance written notice of cancellation was provided

17

prior to cancellation, and cancellation was effective prior to the fire.[5]  Thus, we conclude that

Scottsdale met its burden of establishing that the policy was cancelled by Plasma Fab in accordance

with the terms of the policy and that it was entitled to summary judgment on this issue as a matter

of law.[6]  *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16; *see also Lazo v. RSI Int'l, Inc.*,

No. 14-06-00432-CV, 2007 Tex. App. LEXIS 7077, at *9 (Tex. App.—Houston [14th Dist.]

Aug. 30, 2007, no pet.) (mem. op.) (construing identical policy language and holding that where

premium finance company sent notice of cancellation on July 3, 2001, to be effective July 3, 2001,

contract was cancelled effective July 3, 2001).  We overrule Plasma Fab's first issue.

### *Reinstatement*

In the alternative to the arguments in its first and second issues, Plasma Fab contends

that even if the policy was effectively cancelled, Scottsdale failed to establish as a matter of law that

it did not reinstate the policy with no interruption in coverage.  The summary judgment record does

not support this argument.  The notice of cancellation at issue was mailed by BankDirect on

December 4, 2008, and resulted from Plasma Fab's failure to pay its November premium.  Prior to

that, on November 19, 2008, Scottsdale had mailed to BankDirect a notice of cancellation that was

---

[5]  We find Plasma Fab's reliance on *Stroop v. Northern County Mutual Insurance Co.* misplaced.  *See* No. 05-97-01517-CV, 2000 Tex. App. LEXIS 8082 (Tex. App.—Dallas Dec. 4, 2000, pet. denied).  In *Stroop*, the issue was whether an insured and an insurer could retroactively cancel a policy after a collision occurred when the insured was covered by another insurer, *see id.* at *8, the parties stipulated that no advance written notice had been provided, *see id.* at *3, and the court held that the attempted cancellation violated public policy, *see id.* at *15.  We find *Stroop* inapposite.

[6]  Plasma Fab also contends that Scottsdale's burden to establish cancellation included proving that BankDirect complied with the statutory notice provisions, an argument we have already rejected.

18

to be effective December 1, 2008. That notice of cancellation was based on Plasma Fab's failure to pay its October premium. However, although Plasma Fab was late in paying, it had paid its October premium on November 11, 2008. Consequently, on December 9, 2008, Scottsdale sent a notice of reinstatement, rescinding the notice of cancellation that was to be effective *December 1, 2008*, for failure to pay the October premium and reinstating the policy for the second time. In the meantime, Plasma Fab had become delinquent on its November premium, and BankDirect prepared the notice of intent to cancel at issue, stating a cancellation date of December 4, 2008. Thus, by its express terms, the reinstatement dated December 9 applied to the cancellation that was to be effective December 1, not to the cancellation stating an effective date of December 4, 2008, for which Scottsdale subsequently declined reinstatement. We conclude that Scottsdale met its summary judgment burden of establishing that it did not reinstate the policy, *see Knott*, 128 S.W.3d at 215–16, and overrule the remainder of Plasma Fab's first and second issues.

### Claims for Violations of Insurance Code and DTPA

In its reply brief, Plasma Fab argues that Scottsdale was not entitled to summary judgment as to its claims against Scottsdale for violations of the Insurance Code for which remedy is allowed under the DTPA. *See* Tex. Ins. Code §§ 541.060(a)(1), (a)(2)(A), (a)(3); Tex. Bus. & Com. Code § 17.50(4).[7] Plasma Fab claimed that Scottsdale committed these violations by issuing

---

[7] Ordinarily, an issue raised for the first time in a reply brief is waived and need not be considered by an appellate court. *See McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Hutchison v. Pharris*, 158 S.W.3d 554, 563 (Tex. App.—Fort Worth 2005, no pet.). However, Scottsdale fully briefed the issue of Plasma Fab's claims for violations of the Insurance Code and DTPA, and Plasma Fab responded in its reply brief. Therefore, this issue is properly before us. *See McAlester Fuel*, 257 S.W.3d at 737 (addressing

a false representation in denying Plasma Fab's claim when Scottsdale had reinstated the policy and issued Endorsement Number 7 voiding Endorsement Number 6, which purported to cancel the policy retroactive to December 4, 2008. Having already concluded that the policy was effectively cancelled and not reinstated, we further conclude that Scottsdale established as a matter of law that its denial of the claim was not a false representation as a matter of law. *See Knott*, 128 S.W.3d at 215–16. Further, the endorsements were not issued until after the policy was cancelled, and the policy they purported to amend was no longer in effect. There was nothing to amend, and the endorsements were a nullity. *See Lazo*, 2007 Tex. App. LEXIS 7077, at *9–10. We overrule Plasma Fab's reply issue as to its claims against Scottsdale for violations of the Insurance Code and DTPA.

## CONCLUSION

We reverse the trial court's order granting BankDirect's motion for summary judgment as to Plasma Fab's claims against BankDirect and remand for further proceedings consistent with this opinion. We affirm the trial court's order in all other respects.

---

contentions asserted in reply brief that replied to issues fully briefed by appellee); *Hutchison*, 158 S.W.3d at 563 (issue raised by appellant for first time in reply brief properly before court because parties joined issue when appellee fully argued issue and appellant replied); *cf. Sunbeam Envtl. Servs. Inc. v. Texas Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no pet.) (where appellant raised issue in reply brief that was not raised in opening brief *or argued by appellee*, appellant waived issue).

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in Part; Reversed and Remanded in Part;

Filed:   May 8, 2015

21

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## JUDGMENT RENDERED MAY 8, 2015

---

### NO. 03-13-00331-CV

---

**Plasma Fab, LLC and Russell McCann, Appellant**

**v.**

**BankDirect Capital Finance, LLC, a Subsidiary of Texas Capital Bank, N.A.; and Scottsdale Insurance Company, Appellee**

---

**APPEAL FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
BEFORE JUSTICES PURYEAR, GOODWIN, AND FIELD
AFFIRMED IN PART; REVERSED AND REMANDED IN PART –
OPINION BY JUSTICE GOODWIN**

---

This is an appeal from the judgment signed by the trial court on April 25, 2013. Having reviewed the record and the parties' arguments, the Court holds that there was reversible error in the trial court's judgment. The Court reverses the portion of the judgment that grants BankDirect's motion for summary judgment as to Plasma Fab's claims against BankDirect and remands the cause to the trial court for further proceedings consistent with this opinion. The Court affirms the remainder of the trial court's judgment. Each party shall bear their own costs relating to this appeal, both in this Court and in the court below.